## KELLY v. MISSISSIPPI RIVER COALING CO. et al.

### (Circuit Court, W. D. Pennsylvania. December 27, 1909.)

1. COURTS (§ 317*)—JURISDICTION OF FEDERAL COURT—ALIGNMENT OF PARTIES— SUIT BY STOCKHOLDER.

    To a suit in equity instituted by a stockholder in his own name, but upon a right of action in the corporation, such corporation is an indispensable party, and for the purpose of determining the jurisdiction of a federal

---

court will be aligned with the defendants, where the officers or persons controlling it are shown to be opposed to the object sought by the suit.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 317.*]

**2.** CORPORATIONS (§ 202*)—SUIT BY STOCKHOLDER—RIGHT OF ACTION.

A stockholder cannot maintain a suit in equity in his own right, based on acts of the defendants alleged to have caused injury to him by injuring the property or business of the corporation, thereby depreciating the value of his stock; the right of action in such case being in the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 777; Dec. Dig. § 202.*]

In Equity. Suit by William J. Kelly against the Mississippi River Coaling Company and others. On motion to dismiss for want of jurisdiction. Motion sustained.

Ernest Dale Owen, O. K. Eaton, and Wm. M. Galbraith, for plaintiff.

Reed, Smith, Shaw & Beal, for defendants.

ORR, District Judge. A motion has been filed to dismiss this case for want of jurisdiction. It is urged that the requisite diversity of citizenship, upon which alone jurisdiction may rest, does not exist, because the complainant and the Mississippi River Coaling Company, one of the defendants, are residents of the same state. This requires the determination of the question as to whether the coaling company is an indispensable party defendant.

The bill, after setting forth the names and citizenship of the parties as above outlined, avers that in 1904 the complainant and the defendant C. Jutte & Co. entered into an agreement whereby the parties agreed to organize a corporation under the laws of Louisiana, with a capital stock of $100,000 to be subscribed for by the said complainant and his associates; that the objects and purposes of the corporation were to build docks in the Mississippi river, at or near the city of New Orleans, with the necessary machinery to handle coal boats and to store coal in bins for the purpose of coaling steamers, etc., at a rate of not less than 200 tons per hour; that as soon as the corporation should be organized the said complainant and his associates should transfer thereto a certain lease upon land upon the river for a consideration of $99,600 of stock of the said corporation, and that the remainder of the shares should be taken by the four persons to be named as directors, who should pay cash therefor in order to acquire corporate privileges under the laws of Louisiana; that said Jutte & Co. in said contract agreed to loan to the corporation a sum of money in the neighborhood of $10,000 to build a dock upon said property, and to equip the property for the purposes aforesaid, for which said C. Jutte & Co. were to receive eight notes of equal amount, payable within ten years, with interest, and to be secured by the pledge and delivery of all the shares in the stock of said corporation, which pledge should contain provisions for the sale of said security and the application of the proceeds in a manner not necessary perhaps to be

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

here mentioned, and as an inducement to said C. Jutte & Co. to make said loan and as a bonus for same it was agreed that $52,000 of the capital stock of said coaling company, although pledged for the loan, should be delivered and transferred to the said C. Jutte & Co. The agreement made provision for the application of the net revenues in discharge of the said notes, and provided that said notes were to be paid out of the net earnings, and provided a rate which the coaling company should be paid for putting coal on ships and in bunkers, and that the coaling company should handle no coal but the coal of C. Jutte & Co. for a period of five years, for which a commission was provided in said contract. Other provisions in the agreement are perhaps not necessary for consideration at present.

The bill avers that in pursuance of said agreement the said corporation was organized, and was called the Mississippi River Coaling Company, and that all the provisions of the said agreement were complied with by the complainant; that the $52,000 of the capital stock at par was transferred to the said C. Jutte & Co., and that all of the stock of the corporation was deposited in a bank in New Orleans, ready to be pledged for the payment of the $40,000 of notes provided for in the contract. The bill avers that the officers of the coaling company failed and neglected to execute the said notes and that the same were never executed. The bill further charges that, inasmuch as C. Jutte & Co. were the owners of a majority of the capital stock, they were entitled to vote and did vote the same, with the effect of controlling the said coaling company in such way that each and all of the officers and directors became and now are under the influence and control of the said C. Jutte & Co.; that a certain coal tipple and docks as contemplated by the said contract were erected, and that said C. Jutte & Co. did loan to said company from time to time said sum of $40,000 as the same was required to prosecute the work of construction; that the said C. Jutte & Co., although it was its duty under the contract to furnish the coaling company coal necessary to supply certain steamships, did not supply the same, and that, had said C. Jutte & Co. furnished said coal, there would have been a profit to the coaling company of at least $25,000.

The bill further charges the said C. Jutte & Co. sold and delivered coal directly to customers, and not through said coaling company. The bill avers the officers and directors of the coaling company were almost all of them more largely interested in said C. Jutte & Co. than in the coaling company, and that said C. Jutte & Co. and such officers of the coaling company could by reasonable efforts have succeeded in furnishing business in pursuance of the said contract, whereby there would have been a minimum profit to the coaling company of $500,000, but that they made no effort whatever, and neglected to supply coal to the coaling company, whereby the business was wholly lost. Other specific forms of willful neglect on the part of C. Jutte & Co. and the said officers and directors of the coaling company are averred in the bill. It is further averred that from the time the said tipple was built no coal was handled by it, and no business whatever has ever been done by the said coaling company, and that said officers and directors of

the coaling company have permitted its tipple and docks to get out of repair and to decay.

The bill further avers that said C. Jutte & Co. in January, 1907, brought suit against the coaling company in the Circuit Court of the United States for the Eastern District of Louisiana, claiming that the said coaling company was indebted to said C. Jutte & Co. in a large sum of money for many items, including an item of advances to the amount of over $115,000, from which was deducted said $40,000 described in said suit as an item of eight notes of $5,000 each; that by the bringing of said suit in the Eastern district of Louisiana the same was kept secret from the complainant, although he was the owner of 48 per cent. of the stock of said coaling company, but that service was had upon Albert G. Thomas, as secretary of the coaling company, who was at that time in the employ of the said C. Jutte & Co.; that this suit was so proceeded with that there was a judgment entered in favor of C. Jutte & Co. and against the coaling company for a large sum of money, notwithstanding, as complainant avers, that said C. Jutte & Co. had no proper legal cause of action against the coaling company whatsoever.

The complainant charges in his bill that the judgment so obtained as aforesaid is a part of a general wrongful and fraudulent scheme and design of the defendants in this case for the purpose of preventing the complainant from getting the benefit to which he is entitled as a stockholder of the said coaling company, and to deprive him of his interest in the property of said company and that in pursuance of the said design execution was issued upon the said judgment and levy made upon all the property of the coaling company, and that said C. Jutte & Co. is proceeding to sell said tipple, docks, etc., for its own personal benefit and advantage. The bill further alleges that the said coaling company has not complied with the terms of the lease of the river landing aforesaid, and that by such noncompliance the lease has become ipso facto void and inoperative, and this by the said fraudulent design of the officers and directors of the said coaling company. The bill further says that no demand has been made upon the officers and directors of the coaling company to bring or conduct this suit, for the reason that the same is brought against them charging them with misfeasance, and that such demand would therefore have been useless, and that the suit is not entered for collusion for the purpose of conferring jurisdiction upon the court.

The bill prays for an accounting of the sums that may be due to the coaling company and to the complainant from the defendants other than the coaling company from the various sales of coal made as set forth in the bill, and also an account of the various amounts of coal that could and would have been sold by the coaling company, and of the amount of profits that would have been made by the coaling company and by the complainant, but for the fraudulent acts of the defendants, and, further, an account of the amount due by reason of the facts set up in the bill from the defendants to the coaling company and to complainant by reason of the violation of the contract between complainant and C. Jutte & Co. and by reason of the neglect

and fraudulent acts of the defendants other than the coaling company. The bill prays, further, that the defendants other than the coaling company may be decreed to pay to the coaling company and to the complainant such sums as may be due to them on the taking of such an account, and such other relief as may seem proper.

It cannot be otherwise than that the complainant's rights are to be enforced through the medium of the coaling company. He himself seems to think so, because he has stated the averments necessary to bring him within equity rule 94 of this court. His right of action plainly appears to be the right of action of the coaling company. Indeed, the right of the coaling company is the foundation upon which the relief sought by the complainant himself rests. Inasmuch, however, as the coaling company and its officers are opposed to the object sought by the bill, the corporation is an indispensable party defendant. See Eldred v. American Palace Car Co. of New Jersey, 105 Fed. 457, 45 C. C. A. 1. Many other cases could be cited, but perhaps the most comprehensive opinion on the subject is by Judge Lanning in Groel v. United Electric Co. of New Jersey (C. C.) 132 Fed. 252. The case last referred to is cited by the Supreme Court with approval in Venner v. Great Northern Ry. Co. and James J. Hill, 209 U. S. 24, 28 Sup. Ct. 328, 52 L. Ed. 666.

There is no ground for the alignment of the complainant and the coaling company as parties plaintiff, because the action of the coaling company was such that it is clearly antagonistic to the complaining stockholder. The rule of alignment, as recognized by Mr. Justice Miller in Arapahoe County v. Kansas Pac. Ry. Co. (1877), Fed. Cas. No. 502, and kindred cases, cannot be applied in the case at bar.

Brief reference only need be made to the complainant's contention that, even if this court has no jurisdiction of the main branch of the case, it has jurisdiction to decree to Kelly individually the value of his stock, to which action the coaling company is not a necessary party. So far as appears from the bill, the defendants have done nothing which is an injury to the complainant directly. If the value of his stock in the coaling company has been affected by the acts of the defendants, it is only because the defendants by these acts have destroyed or rendered valueless the assets of the coaling company and thereby indirectly rendered Kelly's stock valueless. For such injury a stockholder has individually no right of action. The right of action is in the corporation, or the complaining stockholder for the benefit of the corporation. To the latter all relief accrues. The opinion of Judge Lurton in McMullen v. Ritchie (C. C.) 64 Fed. 253, and cases cited therein, support this view.

It appears, therefore, that this court is without jurisdiction, and the proceeding should be dismissed. Let an order be drawn in accordance with this opinion.