Ralph D. SWANSON, Marie A. Swanson, and Janet C. Sheaff, Plaintiffs-Appellants,

Roy E. Crummer, Intervening Plaintiff-Appellant,

v.

Glenn W. TRAER et al., Defendants-Appellees.

No. 11351.

United States Court of Appeals Seventh Circuit.

Feb. 10, 1956.

Rehearing Denied March 19, 1956.

James E. Doyle, Philip F. LaFollette, Madison, Wis., William H. Bowman, Milwaukee, Wis., Avern B. Scolnik, Chicago, Ill., for appellants.

Francis X. Busch and James J. Magner, Chicago, Ill., for defendant-appellee Chicago, North Shore & Milwaukee Ry. Co.

Thomas L. Marshall, Bell, Boyd, Marshall & Lloyd, Chicago, Ill., for Bernard J. Fallon, a defendant-appellee.

James E. S. Baker, Kenneth F. Burgess, Chicago, Ill., Marland Gale, New York City, George B. Christensen, Charles F. Short, Jr., Robert H. Farrell, Floyd E. Thompson, Donald W. Ingle, Calvin P. Sawyier, Kenneth Burns, Jr., Chicago, Ill., Brundage & Short, Chicago, Ill., Hodges, Reavis, McGrath, Pantaleoni & Downey, New York City, Johnston, Thompson, Raymond & Mayer, Sidley, Austin, Burgess & Smith, Winston, Strawn, Black & Towner, Chicago, Ill., of counsel, for defendants-appellees Glenn W. Traer, E. Roy Fitzgerald, National City Lines, Inc., A. C. Allyn and Co., a copartnership, R. A. L. Bogan, Helen A. Blutenthal, Evelyn B. Coogan, J. Miles Sherin, A. M. Thompson, Marjory S. Traer, H. C. Blutenthal, Jr., Benjamin S. Warren, Jr., Samuel Insull, Jr., and Shore Line Transit Corporation, a dissolved Indiana corporation.

J. Roy Browning and Richard Rex Parkin, Chicago, for defendant-appellee Francis B. Murphy.

Before DUFFY, Chief Judge, MAJOR and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This is an appeal by Ralph D. Swanson, Marie A. Swanson, and Janet C. Sheaff, and Roy E. Crummer, intervening plaintiff, from orders of the district court dismissing the complaint and action brought by said plaintiffs, who are citizens of the state of Nevada, on behalf of Chicago North Shore and Milwaukee Railway Company, an Illinois corporation, hereinafter referred to as the "Railway Company", and all other stockholders thereof, against the Railway Company and a number of other individuals and firms.[1] It is a stockholders' derivative action.

On January 30, 1950, plaintiffs filed their complaint alleging *inter alia* that certain of the defendants, including officers and directors of the Railway Company, in violation of their fiduciary duties to said company, and for the purpose of enriching themselves and others at the expense of the company, had conspired to develop and execute a plan whereby they would acquire certain bus properties in Wisconsin and elsewhere through certain corporations formed by the defendants as vehicles for the scheme, and would shortly thereafter sell the said bus properties to the company at a huge profit to themselves and others. The complaint alleges, further, that others of the defendants, referred to in the complaint as "third party defendants", knowingly joined the conspirators and participated in the profits resulting from the conspirators' breach of their duties of fidelity to the interests of the Railway Company. It alleges that the defendants profited, and the Railway Company was damaged, to the extent of $1,245,000, by reason of the illegal conspiracy to usurp the powers of the directors of the Railway Company and to breach a duty of loyalty and fidelity.

The complaint prays for judgment requiring the defendants, as directors and officers of the Railway Company and as conspirators and participants with them, to account for all property of the company wasted and misappropriated, and to restore said property to the company, and to account "for all secret gains, profits, advantages, and benefits received by them * * * through the wrongful, improper, and illegal use" of the company's property, and to pay all said gains and profits to the company.

The complaint alleges that a formal demand was served on the board of directors and the president of the Railway Company at a meeting of the board on

---

1. The named defendants are Glenn W. Traer, E. Roy Fitzgerald, Samuel Insull, Jr., Wheelock Whitney, National City Lines, Inc., a Delaware corporation, A. C. Allyn and Co., R. A. L. Bogan, Helen A. Blutenthal, Manferd Burleigh, Evelyn B. Coogan, Charles F. Glore, Francis B. Murphy, L. P. Runkel, J. Miles Sherin, A. M. Thompson, Katherine K. Whitney, Marjory S. Traer, H. C. Blutenthal, Jr., Benjamin S. Warren, Jr., Shore Line Transit Corporation, an Indiana corporation, Chicago North Shore and Milwaukee Railway Company, an Illinois corporation, Bernard J. Fallon and J. H. M. Clinch.

September 26, 1949, informing them of the general facts set forth in the complaint and requesting that they bring said action, and that the demand was rejected. It further alleges that plaintiffs did not attempt to secure action by the company's stockholders prior to the institution of this suit because:

"Such a demand is unnecessary. Under the laws of Illinois, the officers and directors, not the stockholders, manage the affairs of the Railway Company, including the bringing of all actions for and on its behalf. A stockholders' resolution directing the bringing of suit would be futile, since the control of such action would be in hostile hands, for the reason that the officers and directors and counsel for 'The Railway Company' have indicated, as plaintiffs are informed and believe, that they do not believe this suit should be brought, and that they would refuse to bring it. This action is founded on allegations of fraudulent conspiracy joined in by several members of 'The Railway Company's' present Board of Directors."

The complaint also avers that jurisdiction is based upon diversity of citizenship, that all of the individual defendants are citizens of the state of Illinois, that defendant Railway Company is an Illinois corporation and that the other corporate defendants are licensed to do business in Illinois, that on November 1, 1946, the Railway Company was organized to take over the assets of a reorganized railroad company and to continue its business. It also alleges that the initial board of directors consisted of nine members, that defendants Traer, Bogan and Burleigh were members of the initial board, that Bernard J. Fallon and Bernadotte P. Lester were also members of the initial board of directors and had knowledge of defendants' scheme to purchase the Wisconsin bus properties and to resell them to the Railway Company. It is also alleged that Lester and Fallon co-operated with defendants in their plan.

The complaint also charges that on November 1, 1946, defendant Traer, in conjunction with other defendants and in furtherance of the preconceived plan of the defendants, resigned as a director and procured the election of defendant Leon P. Runkel, "thus maintaining the balance of power in the conspirators".

The answer of the Railway Company states *inter alia* that the nature of plaintiffs' action is a matter of law in respect of which this defendant abides the judgment of the court. It also sets forth information as to stock ownership of the plaintiffs, as appearing on the records of said defendant, the service on the individual members of the board of directors and the president on September 26, 1949 of the plaintiffs' demand for the bringing of action, and states that it was declined by the board of directors. It admits that Lester, Bishop and Whitehair are "presently" directors of defendant and that each of them is a resident and citizen of a state other than Illinois, and that each of them is actively participating in the affairs and activities of defendant. The answer sets forth the incorporation of the Railway Company and its succession to the properties of the railroad company, that the initial board of directors consisted of nine persons, namely Traer, Bogan, Burleigh, Fallon, Lester, Stiles, Wood, Bradley and Osborne, as well as other matters not pertinent to this opinion.

The answer also sets forth verbatim the defendant's report to its stockholders for the year 1947, giving information in regard to the purchase of the Wisconsin subsidiaries, and alleges that the report was read and approved at the stockholders' meeting on March 22, 1948. As to other matters set forth in the complaint, the answer avers that the Railway Company "has no knowledge or information sufficient to form a belief".

On December 4, 1950, Traer and certain other defendants, not including the Railway Company, filed a motion to dismiss this action, pursuant to rule 12 of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground *inter alia* that

the court did not have jurisdiction of the subject matter of the action.[2] The mo-

2. On February 19, 1951, the Railway Company's attorneys filed a brief, which contained an affidavit by attorney Francis X. Busch, which stated, *inter alia* that he was retained by the Railway Company and became its general counsel on January 31, 1949, that pursuant to the direction of its board of directors, in April 1949, that the company's acquisition of the so-called Wisconsin Bus Companies be re-examined and reviewed, he assigned James J. Magner, general attorney, to the execution of such work; that thereafter a written report of the findings in such examination was prepared by Magner, reviewed by members of the legal department and returned to the board on June 27, 1949, that at a meeting of the board held on said date William H. Bowman, acting on behalf of James C. Titus and others, stockholders residing in California, served upon each member of said board a written demand, and Busch was "requested to state his legal opinion with respect to the board's duties in respect of the so-called Titus demand and that on said occasion affiant orally stated the following views to the members of the Board, to-wit: (a) that, in the opinion of affiant, because the transaction had not, in the opinion of affiant, been authorized by a quorum of disinterested directors of Railway, Railway's purchase of the so-called 'Wisconsin Bus Properties' constituted a transaction which was voidable at the option of the company; (b) that 'voidable' meant that the transaction was subject to an action for rescission, or, in the alternative, the company could retain the properties and bring an action in the nature of an action for damages, or, perhaps, as suggested by the Titus demand, for a breach of trust; (c) that, with respect to an action for rescission, in affiant's opinion, the members of the Board were not under any legal duty to rescind the transaction merely because the transaction was voidable; that whether the transaction should be rescinded by the corporation was one in respect of which each director was required by law only to exercise, in behalf of the corporation, his best business judgment; that such directors as were eligible to vote, who felt that not to rescind the transaction was to the best pecuniary interest of the corporation, could vote accordingly; that such directors eligible to vote, who felt that rescission of the transaction was in the best pecuniary interest of the corporation, were entitled to vote accordingly; (d) that, with respect to the al-

ternative remedies of suits for damages, or for breach of trust, a suit for damages was, in affiant's opinion, not an effective action; and that with respect to the suggested action for breach of trust, the facts then known to affiant and other members of the Legal Department, which they considered reliable and provable, were not such as to warrant an opinion that such an action would be successful; that the prosecution of such actions could be carried on only at considerable expense to the corporation; that the likelihood of success was not, in the opinion of affiant, strong enough to justify the expenditure of substantial sums of the corporation's money in respect thereof. * * * that all of the directors present, and this affiant, orally and individually expressed the view that Railway should not give up possession of the so-called 'Wisconsin Bus Properties', nor should it seek a rescission of the contracts executed in respect thereof. At the said meeting affiant, together with J. H. M. Clinch and B. P. Lester, were constituted a committee of the Board to go to Los Angeles and to explain to the stockholders whose names were affixed to the so-called Titus demand why counsel and the Board of Directors felt that it was not to the interests of the corporation to rescind the transaction in question, did not favor litigation at all, and to supply the said stockholders with any other information requested respecting the operating condition of the railroad. * * * that sometime after the meeting of June 27, 1949, * * * he received a long-distance telephone call from Roy E. Crummer (then the owner and holder of in excess of 30,000 shares of the capital stock of said Company) saying that he was interested in the Titus demand * * *. That, in the course of affiant's conversation with Mr. Crummer and whoever else was present, affiant said that, in his opinion, it was most inadvisable for the corporation to institute any suit to rescind the purchase of the Wisconsin bus companies; that the Railway had gone to considerable trouble and expense to build up the bus properties and encourage traffic thereon; that the buses were making money; that there were reasonable prospects that with proper and deserved rate increases (application for which was pending or contemplated) the companies would make more money; that in any action for rescission there were almost insoluble accounting complications arising out of questions of interest, earnings,

tion to dismiss was denied on May 7, 1951.

On December 18, 1953, in the district court, there was pending a motion by defendant Fallon for leave to file a second motion to dismiss the complaint, which motion had been continued from time to time. During the course of an argument in connection with said matter, Mr. Busch, attorney for the Railway Company made a statement in behalf of his client. Relevant parts thereof are as follows:

"I am the man in the middle. I represent the corporation. I have a very definite interest in as speedy a determination of this trial as possible.

"I do not believe there is any question but what under Rule 16 and the Sixth Section of that rule, that the Court has the discretion to do just about anything he feels in his judgment he ought to do to expedite the trial, whether it involves a re-hearing of an old demurrer or whether it involves any other question in the case.

"The interest of the North Shore Railroad in this litigation is this: Not only are we, as a middle party, being subjected to a long trial, but as is not unusual in situations of this kind, our by-laws provide that if a Director is unjustly sued because of anything that happened in the course of his stewardship, that we have to pay his attorney's fees, and there are two Directors who are Defendants in this case, and their counsel have very properly taken a very active part in this proceeding.

"My own inclination, and my own view of the thing is that it would be very desirable from our standpoint if the Court would allow this motion to be filed and if the Court would hear this motion.

"If there is a defective complaint here, a complaint upon which a de-

property sold and property acquired. Affiant distinctly remembers using the phrase 'you can't unscramble an egg' to illustrate the complexities of such a situation. Affiant further stated that, from the evidence gathered by and made known to the Law Department, he could not conscientiously advise this corporation, with all its other problems and financial obligations, to undertake the expense incident to a doubtful lawsuit for damages based upon a breach of trust; that he doubted the success of such an action on the facts then known. * * * *

"After Mr. Crummer's statement of his views, affiant said that it could be conceded that Mr. Bowman had collected what appeared to be some suspicious circumstances, but that fraud was required to be clearly proved; that, in affiant's opinion, the evidence of the circumstances was not sufficient to justify him in advising the company to expend what would inevitably run into a lot of money in what would very likely prove a fruitless litigation. Affiant further said that if the stockholders brought a lawsuit to rescind, such a lawsuit would greatly injure the business and credit of the company; that if any stockholder, or group of stockholders, wanted to gamble their own money on the other kind of a lawsuit, the object of which was to bring money into the company's treasury, he could not see where the company's credit would thereby be adversely affected; that the company's position in such case should be one of complete neutrality; that affiant, as General Counsel, would advise it to make all of the information it possessed available to both plaintiffs and defendants alike. Affiant may have stated, but has no present recollection of it, that, personally, he would cheer them on. Affiant did not, then or at any other time, say to Mr. Crummer that it was a 'good stockholders' lawsuit' or a 'good case' or, then or at any other time, use any such expression; on the contrary, he at all times stressed the difficulties of obtaining the evidence legally required to insure the success of any such action that might be brought. * * * He so reported his views to the Board at its next meeting, July 25, 1949. At that meeting a resolution was adopted that the Board take no action on the so-called Titus demand. When the later and so-called Swanson demand was served upon affiant at the September 26, 1949, meeting of the Board of Directors, it came as a complete surprise to said affiant; that up to that time he had never heard that any Nevada stockholder or stockholders contemplated making any such demand on the Board or any member thereof."

cree could not stand, and if it is not subject to amendment to make it good, that, of course, would dispose of the case at the threshold of the case; and if that is a proper disposition of it, and if your Honor so decided—I am convinced it would be a proper disposition of it—I think it would serve the cause of justice all around and be particularly agreeable to the middlemen in this case."

When Mr. Scolnik, of counsel for plaintiffs, stated that Mr. Busch "at no time ever stated to us, either in Court or by any pleading, that this was a defective complaint", Mr. Busch replied, "I do not say so now." He then stated:

"Just a word in answer to Mr. Scolnik: This complaint charges, as you know, that these Defendants by various means, methods and devices, obtained X Dollars that they were not entitled to, but which the corporation was entitled to, and this suit is brought by these men who are the stockholders to put that money into the corporation.

"All of the—I won't say 'all', but the matter was considered by the Board of Directors of the railroad long before we received any notice from this group of stockholders asking us to bring suit, and after a very thorough investigation I as General Counsel at that time, and Mr. Magner as General Attorney, advised the company that the chances of a recovery were not sufficient to warrant the expense they would be put to in starting a lawsuit.

"When this complaint was filed I did read the complaint very carefully. I never had any idea, myself, of demurring to it because it seemed to me I could have been very seriously criticized if I had demurred to it.

"Good or bad, I answered it with the idea in view, which I stated later on in my brief, that if there is any money coming to us we want it and we would be very glad to receive it.

"Now, that position is not at all inconsistent with what I told your Honor a little while ago, that we are interested in the most prompt disposition that is possible of this case.

"If a proper disposition can be made upon this pretrial conference, all well and good. If it cannot be made and we have to go into the trial, that is something else again, but I do say at this time that to take a rather technical attitude in refusing to hear a motion which may be very informative to the Court, and which may result in a position taken by the Court that the complaint is defective, and then it is a question whether it can be corrected or not—if the case were to end on that note and that is the proper disposition of it, I say that if the case is going to be disposed of ultimately adversely to the Plaintiffs, if it can be done now on this motion or if this motion suggests a way by which it can be done, everyone concerned is going to be better off.

"I do not want to prejudge the motion, and I am not going to argue it one way or the other, but I say that under Rule 16 the Court certainly has the power to do anything that the Court sees fit to do that will speed up the disposition, the proper disposition of the litigation, and I think it would be a mistake to deny the filing of this motion.

"I think the motion should be considered by the Court because it is seriously suggested that it may be determinative."

In the Railway Company's brief in this court, presented by Mr. Busch and Mr. Magner, its attorneys, the following quotation from Solimine v. Hollander, 129 N.J.Eq. 264, 19 A.2d 344, 346, is set forth:

"The rule that I gather from the cases is to the effect that where directors are charged with misconduct in office and are sought to be held

accountable, the corporation is required to take and maintain a wholly neutral position, taking sides neither with the complaining stockholder nor with the defending director. * * * "

The brief then proceeds:

"Statements of similar import are to be found in Otis & Co. v. Pennsylvania R. Co., D.C.E.D.Pa., 57 F. Supp. 680; Kaiser v. Niemeyer, 198 Wis. 581, 225 N.W. 188; 'Corporate Executives' Compensation,' Prof. George T. Washington, pages 314, 320, 321."

This corporate defendant has conducted itself in accordance with that philosophy throughout the litigation. Therefore, on this appeal, this appellee does not participate in the question of law which was presented by the motion of the defendant Fallon.

However, the above rule does not mean that a corporate defendant must be forever voiceless—where its treasury is concerned. Since corporate directors may have a right to seek reimbursement from the corporation for the costs of their defense (if they defend successfully) the corporate defendant is and must be interested in the length of the litigation. What might save time might save costs.

Therefore, when the defendant Fallon, asserting that he wished to present a point of law not theretofore argued, and which, if ruled in his favor, would be determinative of the entire case, sought leave to file a motion to dismiss, the corporate defendant urged the trial court that the leave be granted. It did so for the obvious reason that it would be an atrocious waste of the time of the court and a needless expense to the corporation, for the respective parties to embark upon a lengthy trial, only to find in the course thereof, or at its termination, that the complaint was fatally defective.

After hearing full argument from all of the parties, the District Court granted the motion of the defendant Fallon to be heard upon his motion to dismiss. This was a sound exercise of the court's discretion. It has been held that a motion to dismiss a complaint because of failure to state a claim on which relief can be granted is always timely, even just before trial. Land v. Prudhomme Oil Co., D.C.La.1944, 3 F.R.D. 377. A motion to dismiss for failure to state a claim may be made at the trial. Ginsburg v. Standard Oil Co. of New Jersey, D.C.S.D.N.Y. 1945, 5 F.R.D. 48. The fatal deficiency of a complaint is a defect that is never waived. Robeson v. Fanelli, D.C.S.D.N.Y., 94 F.Supp. 62, 63.

The corporate defendant respectfully submits that granting the defendant Fallon leave to file the motion to dismiss, and to be heard thereon, was a sound exercise of judicial discretion.

We are confronted, in a brief filed by various defendants,[3] with a challenge to the jurisdiction of the district court and this court. The complaint having expressly asserted federal court jurisdiction based upon diversity of citizenship, the said defendants' brief maintains that the Railway Company, joined as a defendant, must be realigned as a party plaintiff.

The named plaintiffs and the intervening plaintiff are citizens of the state of Nevada. The named defendants are citizens of the state of Illinois.

The act of congress [4] provides that the district courts shall have original jurisdiction of all civil actions "where the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between: (1) Citizens of different States: * * *."

The United States Supreme Court construed a similar act in Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435, in

3. Glenn W. Traer, E. Roy Fitzgerald, National City Lines, Inc., A. C. Allyn and Co., a copartnership, R. A. L. Bogan, Helen A. Blutenthal, Evelyn B. Coogan, J. Miles Sherin, A. M. Thompson, Mar-

jory S. Traer, H. C. Blutenthal, Jr., Benjamin S. Warren, Jr., Samuel Insull, Jr., and Shore Line Transit Corporation, a dissolved Indiana corporation.

4. 28 U.S.C.A. § 1332.

which the court was considering a suit where some of the plaintiffs were citizens of Massachusetts and all of the defendants except Curtiss were also citizens of that state, Curtiss being a citizen of Vermont. Chief Justice Marshall said:

"The court understands these expressions to mean, that each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued, in the federal courts. That is, that where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued, in those courts."

He concluded that jurisdiction could not be supported.

■ Plaintiffs' suit is not their own, but the corporation's. It is the real party in interest and plaintiffs are allowed to act in protection of its interest somewhat as a "next friend" might do for an individual. Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, at page 522, 67 S.Ct. 828, 91 L.Ed. 1067.

In City of Indianapolis v. Chase National Bank, 314 U.S. 63, at page 69, 62 S. Ct. 15, at page 17, 86 L.Ed. 47, the court said:

"To sustain diversity jurisdiction there must exist an 'actual', Helm v. Zarecor, 222 U.S. 32, 36, 32 S.Ct. 10, 11, 56 L.Ed. 77, 'substantial', Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 81, 41 S.Ct. 39, 41, 65 L.Ed. 145, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435."

■ In a stockholders' derivative suit such as the case at bar, the corporation is an indispensable party. Meyer v. Fleming, 327 U.S. 161, 167, 66 S.Ct. 382, 90 L.Ed. 595; City of Davenport v. Dows, 18 Wall. 626, 85 U.S. 626, 21 L. Ed. 938; Greenberg v. Giannini, 2 Cir., 140 F.2d 550, 554, 152 A.L.R. 966.

■ The question of diversity is not solved by a mere reference to the parties' own determination of who are plaintiffs and who are defendants. It is the duty of the federal courts to look beyond the pleadings for jurisdictional purposes and align the parties according to their real interests, which would normally put the Railway Company on the plaintiffs' side. Koster v. (American) Lumbermens Mutual Casualty Co., supra, 330 U.S. at page 523, 67 S.Ct. at page 831; City of Indianapolis v. Chase National Bank, supra, 314 U.S. at pages 69, 70, 62 S.Ct. at pages 16, 17. An Illinois corporation would then appear among the plaintiffs and Illinois citizens would appear as the defendants, and jurisdiction would be ousted.

However, the named plaintiffs rely upon the doctrine that, even if a corporation would normally be realigned as a plaintiff by the court, jurisdiction is saved by a special dispensation, because, they say, "the corporation is 'in antagonistic hands'". They rely on Doctor v. Harrington, 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606, and Koster v. (American) Lumbermens Mutual Casualty Co., supra. The plaintiffs must show the existence of facts giving credence to the allegation in their complaint that the "control of such action would be in hostile hands", since this matter relates directly to the question of jurisdiction. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, at page 189, 56 S.Ct. 780, 80 L.Ed. 1135. The principal question before us, therefore, is whether plaintiffs have shown the existence of such antagonism.

First, they contend that only the allegations of the complaint are to be considered in determining that question. They say that those allegations are clearly sufficient to show that the corporation is "in antagonistic hands", and thus to permit the joinder of the corporation as a party defendant.

■ The fact that the Railway Company's board of directors rejected the formal demand that the corporation bring this suit, as alleged in the com-

plaint, is not enough to show that the corporation was then in antagonistic hands. The following language from Smith v. Sperling, D.C., 117 F.Supp. 781, at page 802, is persuasive on this point:

"For a corporation to be 'in antagonistic hands', * * * or to have a 'hostile attitude' * * * such as would permit alignment on the side against its presumptive financial interests, surely requires more than a mere argument or difference of opinion between the corporation and the suing stockholder as to the desirability of bringing the suit. Patently, if difference of opinion were all the 'controversy' required to be shown between the stockholder and his corporation in order to preclude alignment of the latter with the plaintiff-stockholder, then there can be no occasion for all the pages of discussion of corporate domination or control, since every stockholder's derivative suit is by definition predicated upon the assumption that the corporation has refused to sue."

The allegation in the complaint that the fraudulent conspiracy charge was joined in by "several members" of the Railway Company's "present" [5] board of directors obviously falls short of a charge that the corporation was then in hostile hands. The control of the board was in the hands of a majority thereof, and "several" does not necessarily, and usually does not, mean a majority of a board of nine members. It is not charged that the remaining members of the board or any of them were under the control, domination or influence of the "several members". These allegations fail to charge that the corporation or those in control of it were hostile to the prosecution of the instant suit.

Secondly, the named plaintiffs say that, if matters beyond the complaint are to be looked to, the decisive fact is that the answer filed by the Railway Company controverts the complaint in important particulars, referring specifically to paragraph 16 of the answer. This paragraph purports to be an answer to paragraph 16 of the complaint which charged:

"At no time were the purchases complained of submitted to the 'successor Railway Company's' stockholders for their authorization, approval, or ratification, accompanied by a full presentation of the facts."

In answering, the Railway Company denied the aforesaid charge, and further stated that its annual report for 1947 was distributed to its stockholders about March 1, 1948, setting forth information about the purchase of the various bus lines involved in this case. The answer also showed that the report had been read to the stockholders and approved by them at the annual meeting on March 22, 1948. We fail to see how such an answer indicates any antagonism towards this suit.

The named plaintiffs also contend that counsel for the Railway Company took positions in the district court antagonistic to them (e. g., oral argument of said counsel on December 18, 1953).

However, we find that his remarks indicated that the Railway Company was neutral on the merits of the case, but was anxious to expedite the matter so that it might be concluded. One of the reasons for his position was that the by-laws of the company provided that, if a director were unjustly sued "because of anything that happened in the course of" his duties as such, the corporation would be liable for his attorney's fees, and there were then two of its directors named as defendants in the case, who were being represented by their own counsel. Railway Company's counsel stated that it would be very desirable from his client's standpoint for the court to hear a pending motion to dismiss and rule upon it. He told the court that, long before a demand was made upon the board of directors to bring the suit, he, as counsel for the Railway Company, and Mr. Magner, its general attorney, advised the company that the chances of recovery were not

5. January 30, 1950, when the suit was filed.

sufficient to warrant the expense they would be put to in starting a lawsuit. He concluded by telling the court that he thought the motion should be considered "because it is seriously suggested that it may be determinative."

We fail to find in these statements any evidence of antagonism by the Railway Company towards this suit.

■ Moreover, in connection with our consideration of these matters which are beyond the allegations of the complaint, we find that Mr. Busch, counsel for the Railway Company, made an affidavit indicating that, as early as April 1949, pursuant to the direction of its board of directors, he re-examined and reviewed the matter of the acquisition of the Wisconsin bus companies, assigned Magner to the work, and made a written report to the board on June 27, 1949, on which date Mr. Bowman, then acting for several stockholders in California, and now appearing in this court as one of counsel for the named plaintiffs, served a written demand upon the board. Thereupon Mr. Busch was requested to state his legal opinion with respect to the board's duty in view of the demand then made. Mr. Busch then advised the board that, in his opinion, because the Wisconsin bus matter had not been authorized by a quorum of disinterested directors of the Railway Company, its purchase of these bus properties was voidable at the option of the company, which meant that it was subject to rescission, or, in the alternative, the company could bring an action for damages or for a breach of trust; that as to rescission, that question was one in respect to which each director was required by law to exercise his best business judgment; and, with respect to the other remedies, a suit for damages would not be an effective action and the facts then known to him were not such as to warrant an opinion that an action for a breach of trust would be successful; that the prosecution of such actions could be carried on only at considerable expense to the corporation, and the likelihood of success was not, in his opinion, strong enough to justify the expenditures of the corporation's money in respect thereof; whereupon all of the directors present and Mr. Busch expressed the view that the Railway Company should not give up possession of the so-called bus properties or seek rescission of the contracts executed in respect thereof.

What occurred after said meeting we have hereinbefore set forth.

We think that the foregoing facts demonstrate that, in their business judgment, both the directors and Mr. Busch were of the sincere opinion that the filing of such a suit would not be for the best interests of the corporation and its stockholders. The named plaintiffs disagreed. This difference of opinion is not of itself evidence of antagonism on the part of the Railway Company.

■ The test is whether there is a collision between the personal interests of those in control of the corporation and the interests of the corporation itself in the subject matter of the suit. Such antagonism may appear from the relationship of those in control of the corporation to the defendants, or by the words or acts of those in control which might, as a matter of fact, prove an attitude antagonistic to the suit. Situations readily suggest themselves in which plaintiffs might be impeded in preparing and prosecuting a case, such as a refusal of the corporation to permit access to its files and records, or the corporation's giving aid to the defendants in opposing the suit.[6] No such relationship, words or acts are charged by plaintiffs in this

6. Illustrations of such situations may be found in Hyams v. Calumet & Hecla Mining Co., 6 Cir., 221 F. 529; New Albany Waterworks v. Louisville Banking Co., 7 Cir., 122 F. 776; Groel v. United Electric Co., C C., 132 F. 252, at page 264 cited with approval in Venner v. Great Northern R. Co., 209 U.S. 24, at page 32, 28 S.Ct. 328, at page 330, 52 L. Ed. 666, at page 669; Howard v. National Telephone Co., C.C.N.D.W.Va., 182 F. 215; Kelly v. Mississippi River Coaling Co., C.C.W.D.Pa., 175 F. 482; Redfield v. Baltimore & O. R. Co., C.C. S.D.N.Y., 124 F. 929.

case. Hostility is not shown. As we have pointed out, the mere refusal by the Railway Company to bring the suit is not evidence of hostility toward plaintiffs, especially when based upon advice of counsel who studied the situation.

We hold that the Railway Company named as a party-defendant must be re-aligned as a party plaintiff. It follows that diversity of citizenship is not present and that the district court was and is without jurisdiction. For that reason, the orders of dismissal are

Affirmed.