Ralph D. SWANSON, Marie A. Swanson and Janet C. Sheaff, Appellants,

Roy E. Crummer, Intervening Plaintiff-Appellant,

v.

Glen W. TRAER et al., Defendants-Appellees.

No. 11351.

United States Court of Appeals Seventh Circuit.

Nov. 29, 1957.

Rehearing Denied Jan. 10, 1958.

James E. Doyle, Philip F. La Follette, Madison, Wis., William H. Bowman, Milwaukee, Wis., Avern B. Scolnik, Chicago, Ill., for appellants.

Francis X. Busch, James E. S. Baker, Kenneth F. Burgess, Thomas L. Marshall, Chicago, Ill., Marland Gale, New York City, Geo. B. Christensen, Charles F. Short, Jr., Robert H. Farrell, J. Roy Browning, Richard Rex Parkin, Floyd E. Thompson, Chicago, Ill., for appellees.

Before FINNEGAN, SCHNACKENBERG and HASTINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

The United States Supreme Court reviewed our decision in this case, Swanson v. Traer, 7 Cir., 230 F.2d 228, and held that jurisdiction, based upon diversity of citizenship, is present. Swanson v. Traer, 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221. That court therefore reversed our judgment and remanded the case with instructions that we consider whether, under Illinois law, this suit is of that special character which stockholders may bring, which question we did not reach in our prior opinion.

It will be noted that the Supreme Court referred to Hawes v. City of Oakland, 104 U.S. 450, 560, 26 L.Ed. 827, as containing the classical description of those situations in which a stockholder may sue on behalf of his corporation. The court said, 354 U.S. at page 117, 77 S.Ct. at page 1118:

"Whether local law follows that definition or adopts another and whether this case falls within the one provided by local law is a question on which the Court of Appeals has not ruled. We therefore remand the case to it for consideration of the question."

The facts which are relevant at this time are among those set forth in our prior opinion, supra.

Aided by reargument we now explore the law of Illinois applicable to those facts.

To ascertain the law of Illinois, plaintiffs rely, *inter alia*, on Goldberg v. Ball, 305 Ill.App. 273, 27 N.E.2d 575. In that case, leave to appeal was denied by the Illinois Supreme Court. 306 Ill.App. xxiii. Defendants do not dispute that the Goldberg case declares the Illinois law; in fact, the most exhaustive brief for any of the defendants, that filed for Bernard J. Fallon, repeatedly cites that case.

Because the court, in determining the Illinois law in a stockholders' derivative action, in the Goldberg case, 305 Ill.App. at 283, 27 N.E.2d at page 580, cited with approval and quoted from United Copper Securities Co. v. Amalgamated Copper Co., 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119, we are justified in considering the latter case for our present purpose. In the Amalgamated Copper case, plaintiffs were the holders of a small part of the outstanding stock of United Copper Company. On its behalf, they brought an action for damages charging that defendants violated the Sherman Act and thereby injured United Copper Company. Their complaint alleged that, before commencing the action, they demanded that United Copper Company institute such action and that its board of directors refused so to do.

The court said, 244 U.S. at page 263, 37 S.Ct. at page 510, that the question presented was:

"Whether a stockholder in a corporation which is alleged to have a cause of action in damages against others for conduct in violation of the Sherman Act may sue at law to recover such damages in the right of the corporation, if, after request, it refuses to institute the suit itself?"

For the court, Justice Brandeis answered the question,—

"Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management, and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders. Courts interfere seldom to control such discretion *intra vires* the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment; * * *."

Inasmuch as there is no showing in the case at bar that the 1949 board of directors, upon which plaintiffs made a demand, was controlled by the alleged wrongdoers or that a majority of the directors on the 1949 board stood in any relation to the alleged wrongdoers, or that they had been guilty of any misconduct whatsoever,[1] the following statement from Justice Brandeis' opinion, 244 U.S. at page 264, 37 S.Ct. at page 510, becomes pertinent:

" * * * In the instant case there is no allegation that the

United Copper Company is in the control of the alleged wrongdoers, or that its directors stand in any relations to them, or that they have been guilty of any misconduct whatsoever. * * * The fact that the cause of action is based on the Sherman Law does not limit the discretion of the directors or the power of the body of stockholders; nor does it give to individual shareholders the right to interfere with the internal management of the corporation."

In deciding whether this suit is of that exceptional character which stockholders may bring (354 U.S. 114, 116, 77 S.Ct. 1116, 1 L.Ed.2d 1221), we refer to Hawes v. City of Oakland, supra, 104 U.S. at page 456, 26 L.Ed. 827:

"But perhaps the best assertion of the rule and of the exceptions to it are found in the opinion of the court by the same learned justice in Mac-Dougall v. Gardiner, in 1875, 1 Ch.D. 13. 'I am of the opinion,' he says, 'that this demurrer ought to be allowed. I think it is of the utmost importance in all these controversies that the rule which is well known in this court as the rule in Mozley v. Alston [1 Ph. 790], and Lord v. Copper Miners' Company [2 Ph. 740], and Foss v. Harbottle [2 Hare 461], should always be adhered to; that is to say, that nothing connected with internal disputes between shareholders is to be made the subject of a bill by some one shareholder on behalf of himself and others,

1. In our prior opinion (Swanson v. Traer, 7 Cir., 230 F.2d 228, 236), we said:
"The allegation in the complaint that the fraudulent conspiracy charge was joined in by 'several members' of the Railway Company's 'present' board of directors obviously falls short of a charge that the corporation was then in hostile hands. The control of the board was in hands of a majority thereof, and 'several' does not necessarily, and usually does not, mean a majority of a board of nine members. It is not charged that the remaining members of the board or any of them were under the control, domination or influence of the 'several members'."

Obviously the reference to the "present" board is to the 1949 board, inasmuch as the complaint was filed on January 3, 1950.

Neither in their briefs in this court, nor on the oral reargument, have plaintiffs contended that the majority of the board which rejected their demand that suit be filed was involved in the fraudulent conduct charged against certain prior members of the board. In fact, as pointed out, 7, *post*, plaintiffs' counsel have stated they do not charge the 1949 majority with dishonesty.

unless there be something illegal, oppressive, or fraudulent; unless there is something *ultra vires* on the part of the company *qua* company, or on the part of the majority of the company, so that they are not fit persons to determine it, but that every litigation must be in the name of the company, if the company really desire it. Because there may be a great many wrongs committed in a company,—there may be claims against directors, there may be claims against officers, there may be claims against debtors; there may be a variety of things which a company may well be entitled to complain of, but which, as a matter of good sense, they do not think it right to make the subject of litigation; and it is the company, as a company, which has to determine whether it will make anything that is a wrong to the company a subject-matter of litigation, or whether it will take steps to prevent the wrong from being done.'"

It is important to note that the Illinois court in the Goldberg case, supra, quoted with approval from Hawes v. City of Oakland, supra.

In the case at bar the plaintiffs, in reargument, stated that they rely on the following situation, set forth in Hawes v. City of Oakland and quoted in the Supreme Court's opinion:

"Or of such a fraudulent transaction completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or to the interests of the other shareholders; * *."

The "acting managers" in the case at bar were the members of the 1949 board of directors who refused plaintiffs' demand that a suit be filed. As we have already seen, there is no showing that a majority of them, either in connection with some other party or among themselves or with other shareholders, were parties to a fraudulent transaction completed or contemplated. The contrary does appear. Hence the described situation upon which plaintiffs rely does not exist in the case at bar.

In Hawes v. City of Oakland, supra, where the foundation of a stockholders' derivative action was that the corporation was furnishing free water to the city of Oakland, the court, 104 U.S. at page 462, 26 L.Ed. 827, said:

"* * * It may be the exercise of the highest wisdom to let the city use the water in the manner complained of. The directors are better able to act understandingly on this subject than a stockholder residing in New York. * * *"

To paraphrase that language, it may well be said that in the case at bar it may be the exercise of the highest wisdom that the corporation not file a suit as demanded by the plaintiffs and, further, that the 1949 directors were better able to act understandingly on this subject than the plaintiff stockholders residing in Nevada.

The Goldberg case also follows Corbus v. Alaska Treadwell Gold Mining Co., 187 U.S. 455, 23 S.Ct. 157, 47 L.Ed. 256, thus adopting that decision as expressive of the law of Illinois. In the Corbus case, the court said 187 U.S. at page 463, 23 S.Ct. at page 160:

"* * * The directors represent all the stockholders, and are presumed to act honestly and according to their best judgment for the interests of all. Their judgment as to any matter lawfully confided to their discretion may not lightly be challenged by any stockholder or at his instance submitted for review to a court of equity. The directors may sometimes properly waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right. They may regard the expense of enforcing the right or the furtherance of the general business of the corporation in determining whether to waive or insist upon the right. And a court of equity

may not be called upon at the appeal of any single stockholder to compel the directors or the corporation to enforce every right which it may possess, irrespective of other considerations. It is not a trifling thing for a stockholder to attempt to coerce the directors of a corporation to an act which their judgment does not approve, or to substitute his judgment for theirs. * * *."

In the Goldberg case it appears that plaintiff made no demand upon either the board of directors or the stockholders prior to bringing her suit. It is true that in the case at bar, a demand on the 1949 board of directors was made by plaintiffs, and, following the reports of a comprehensive investigation by attorneys for the corporation, the board of directors refused to bring the contemplated action. In the Goldberg case the Illinois court said, 305 Ill.App. at page 282, 27 N.E.2d at page 579, that

"* * * it is stated that such a demand would be refused because some of the directors who were not among the 'profit making ones' and were in the majority, refused to do anything because of their acquaintance or friendship with the offending directors. We do not think this is sufficient to excuse the plaintiff from following the law which requires that a demand be made in good faith. Directors who are elected by stockholders and placed in control of a corporation are not to be superseded by a stockholder without a strong showing having been made that the *directors are mismanaging the corporation and are dishonest.*" (Italics supplied for emphasis.)

In the Goldberg case the plaintiff's *second amended complaint set forth:*

"(d) Should the present board of directors control a cause of action similar to that set forth in this complaint, such proceedings would be in friendly hands by reason of the influence and the domination of the director defendants."

The Illinois court said, 305 Ill.App. at page 284, 27 N.E.2d at page 580:

"Although there are four present members of the board who are charged with having obtained profit through the transaction complained of, no allegation is set forth as to how this influence and domination of the four over the eight was to be consummated. * * *"

It is significant that, in the case at bar, there is no allegation by plaintiffs that the majority of the 1949 board was under the influence or domination of the persons who are charged as wrongdoers. Nor is there any contention that the majority of the 1949 board of directors was dishonest; in fact, such an imputation was expressly disclaimed by plaintiffs' counsel on oral reargument in this court.

■■■ To be consonant with the reasoning and policies in the cases above cited we must hold that if a board of directors, a majority of which are admittedly honest and have not been involved in the alleged wrongs, refuses a demand to bring suit, then the complaining shareholders' judgment shall not be substituted for that of the directors. In those circumstances, mismanagement of the corporation is not shown.

It is obvious that the requirement that a stockholder, before filing a derivative action on behalf of his corporation, must first demand of its board of directors that it cause such an action to be instituted, does not mean that the board's refusal on demand to act, *ipso facto,* clears the way for a suit by the demanding stockholder on behalf of the corporation. If it were so, the making of the demand would become a meaningless mechanical operation. If the directors who constitute a majority of the board and who reject the demand are dishonest, guilty of a breach of trust, were participants in the fraudulent acts relied upon by the stockholder as a basis for the legal action which he demands, or are subject to the control of the alleged wrongdoers, then equitable jurisdiction may be invoked and he may proceed to

file the suit himself. However, if the majority are honest, not guilty of a breach of trust, not subject to the control of the alleged wrongdoers, and were not participants in the fraud charged, he may not sue.

■ A corporation's right not to sue is correlative to its right to sue. Unless an equitable basis for intervention be shown, an individual stockholder has no more right to challenge by a derivative suit a decision by the board of directors not to sue than to so challenge any other decision by the board.

■ Moreover, if plaintiffs rely upon such an equitable basis, they must allege and prove the facts constituting it. Here, there is no such allegation or proof.

The governing principle is stated in 18 C.J.S., Corporations § 562, pp. 1277–1278, thus:

"A stockholder may sue on behalf of the corporation, to prevent irremediable injury or failure of justice, in case * * * of some fraudulent action or conduct on the part of such directors, trustees, officers, or other stockholders, either among themselves or in connection with third persons.

\* \* \* \* \*

"In other words, the grounds of action are fraud, breach of trust, illegality, and ultra vires acts. In the absence of fraud, oppression, breach of trust, or an ultra vires act, the question of whether or not the corporation shall sue to enforce a right of action belonging to it is to be determined by the proper corporate authorities according to their judgment and discretion, and a stockholder may not sue to enforce the right of action of the corporation, even though he has satisfied all conditions precedent, * * *."

Where a basis for equitable intervention in the internal affairs of a corporation is shown, a stockholder's derivative suit may be maintained, but that is a very different thing from plaintiffs'

theory here, that only a demand on the board of directors and its rejection are necessary to clothe a stockholder with authority to maintain such a suit. This theory has no basis in Illinois law. They rely on Merle v. Beifeld, 275 Ill. 594, 114 N.E. 369, which is readily distinguishable from the instant case. There a stockholder successfully maintained a suit on behalf of a corporation. However, the defendant Beifeld, according to the evidence, was in control of a majority of the stock of the corporation and controlled the election of its directors and their acts after being elected, and he was also the president and director of the Sherman House Hotel Company, and, in fact, proprietor of that institution. The plaintiffs in that case charged, *inter alia*, that Beifeld conspired for the purpose of fraudulently depriving the stockholders of the corporation of their rights by converting its funds for the benefit of himself and the hotel company. The court, 275 Ill. at page 606, 114 N.E. at page 374, said:

" * * * Under these circumstances there can be but little question but that had a demand been made upon it, the request would have been refused, or, if granted and a suit instituted the same would have been under the direction and control of a board of directors favorably inclined to Beifeld, controlled by him and disposed to accede to his wishes in the matter. That a suit of that character would not afford to the aggrieved minority stockholders the measure of relief contemplated by suits of this character seems clear."

Plaintiffs also rely on Babcock v. Farwell, 245 Ill. 14, 91 N.E. 683. It is difficult to see why they do so, inasmuch as the court, 245 Ill. at page 46, 91 N.E. at page 694, said:

" * * * The stockholders cannot ordinarily maintain a suit to enforce any right of the corporation. That privilege belongs to the corporation itself, acting through its directors. The mere failure of the di-

rectors to bring suit does not entitle any stockholder to do so. A demand upon the directors to bring the suit is, in general, essential before a stockholder may himself maintain a bill. * * * "

Plaintiffs also cite Robb v. Eastgate Hotel, Inc., 347 Ill.App. 261, 106 N.E.2d 848, where the court sustained the right of minority stockholders to bring a derivative suit on behalf of the corporation. It appeared that a majority, if not all, of the directors were active participants in an alleged conspiracy to acquire corporate assets for substantially less than their true market value. Hence the court, 347 Ill.App. at page 279, 106 N.E. 2d at page 856, held that a demand on the corporation, before instituting suit, was unnecessary, since it would have been futile.

Nothing inconsistent with our holding herein is found in the other Illinois cases cited by plaintiffs: McIlvaine v. City Nat. Bank & Trust Co., 314 Ill.App. 496, 42 N.E.2d 93; Schmidt v. Crowell-Collier Publishing Company, 349 Ill.App. 229, 110 N.E.2d 464; Stark v. Boggs, 289 Ill. App. 461, 7 N.E.2d 369; Dixmoor Golf Club v. Evans, 325 Ill. 612, 156 N.E. 785; Pelcak v. Bartos, 328 Ill.App. 435, 66 N.E.2d 465; and Bruschke v. Der Nord Chicago S. Verein, 145 Ill. 433, 34 N.E. 417.

We hold, under Illinois law, that plaintiffs' suit is not of that special character which stockholders may bring. The orders of the district court from which this appeal was taken, are, therefore affirmed.

Affirmed.

FINNEGAN, Circuit Judge (concurring in the result).

Our court first encountered this case on appeal from two orders entered in the District Court dismissing the action. The unchanged complaint charged and averred, according to Mr. Justice Douglas, delivering the majority opinion of a divided court in Swanson v. Traer, 1957, 354 U.S. 114, 115, 77 S.Ct. 1116, 1117, 1 L.Ed.2d 1221 reviewing our first opinion reported as Swanson v. Traer, 7 Cir., 1956, 230 F.2d 228: "a conspiracy to defraud the Railway Co. The alleged fraud consisted of a series of sales of transit properties to the Railway Co., properties in which it is charged some of the directors were personally interested. The complaint averred a demand on the directors to bring suit, a refusal on their part, and the futility of making any demand on the stockholders." Then follows, what I think is one of several significant aspects in the opinion of Mr. Justice Douglas: "The District Court dismissed the bill on the ground that no showing had been made that the refusal of the management to act to redress the alleged wrong was not a decision entrusted to the good-faith judgment of the directors. In other words, the District Court concluded that the controversy *did not fall within the exceptional group of cases where the stockholder may dispute the management and take the reins of corporate litigation in his own hands.* On appeal, the Court of Appeals did not reach that question." When the Supreme Court majority rejected our court's realignment of the parties the jurisdictional problem was hurdled leaving for our decision the question, among others, "whether this suit is of that exceptional character which stockholders may bring." Obviously determining the state of Illinois law is a precursor to that question. Accordingly, we were directed to ascertain whether Illinois law follows "the classical description of those situations" delineated in Hawes v. City of Oakland, 1881, 104 U.S. 450, 460, 26 L.Ed. 827 *"or* adopts another and whether" Swanson v. Traer "falls within the one provided by local law." Id., 230 F.2d at page 117. As I understand the *controlling Supreme Court opinion there* are now three questions before us; (1) does Illinois follow Hawes v. City of Oakland, 104 U.S. 450, 26 L.Ed. 827 *or,* (2) if not, what is the applicable Illinois law and (3) do the allegations in the complaint measure up to the relevant law established in answer to question (1) or (2)?

Because of the defects manifest from the face of the complaint, I would approve the district judge's allowance of the several motions. It is difficult to discover any allegations through which plaintiffs assert the existence of an underlying cause of action on the behalf of Chicago, North Shore and Milwaukee Railway Company. Hawes v. City of Oakland, 104 U.S. 450, 460, 26 L.Ed. 827 explains the relevant doctrine "to be that to enable a stockholder in a corporation to sustain in a court of equity in his own name, *a suit founded on a right of action existing in the corporation itself*, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit some action or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter * * (then follows various alternatives)." Here there is a conspicuous absence of allegations showing why equity should annul the 1949 decision of the board of directors.

My brothers, relying on Goldberg v. Ball, 1940, 305 Ill.App. 273, 27 N.E.2d 575, have ascertained that the prevailing law in Illinois is an amalgam of United Copper Securities Co. v. Amalgamated Copper Co., 1917, 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119, and Hawes v. City of Oakland, 104 U.S. 450, 26 L.Ed. 827. If that is the import of the Goldberg case, which incidentally is a decision at the intermediate appellate level in Illinois, I would assume we have further business with the case sent back to us. By its unequivocal statement " * * * the corporation was properly made a defendant" the Supreme Court (345 U.S. 114, 116, 77 S.Ct. 1116, 1 L.Ed.2d 1221) established diversity jurisdiction leaving us to decide the correctness of the trial judge's ruling on the motion to dismiss. See Smith v. Sperling, 1957, 354 U.S. 91, 96, 77 S.Ct. 1112, 1 L.Ed.2d 1205.

It is my view that unless the corporation itself has a cause of action the fact that stockholders have the requisite status under the Hawes case would be unavailing. In my judgment, a cause of action is not created, where none previously existed in the corporation, by considering stockholders' standing to sue. I think it was correct to dismiss the case, below, in any event because there is grave doubt whether an underlying cause of action existed in the corporation in which these stockholders owned their shares.