C. A. Robb, Arthur C. Blomgren, and Paul C. Tychsen, Trading as Robert and Company, a Partnership, and John M. Krafcisin, Appellants, v. Eastgate Hotel, Inc. et al., Appellees.

Gen. No. 45,585.

Opinion filed June 9, 1952. Rehearing denied June 30, 1952. Released for publication June 30, 1952.

ALEX ELSON, of Chicago, for appellants.

HOFFMAN & DAVIS, of Chicago, for certain appellees; MITCHELL EDELSON, and WILLIAM N. WISE, both of Chicago, for certain other appellees.

Mr. Justice Niemeyer delivered the opinion of the court.

Plaintiffs, owners of less than one per cent of the outstanding capital stock of defendant Eastgate Hotel, Inc., hereinafter called Eastgate, appeal from an order striking all of plaintiffs' pleadings and dismissing their suit for want of equity.

The original complaint was filed December 27, 1950, prior to a special meeting on that day of the stockholders of Eastgate called by its directors (a) to consider and vote upon the sale to Benjamin F. Fohrman of the Eastgate Hotel, at 162 East Ontario Street, Chicago, including the personal property contained therein, for $550,000 in cash, and the merchandise belonging to Eastgate intended for resale at the lower of cost or market price prevailing at the time of the conveyance of the hotel and personal property; (b) to consider the advisability of voluntarily dissolving and winding up the affairs of the corporation in the event of the sale referred to in (a). The relief prayed was that the court temporarily enjoin any action at said meeting to approve any sale of the property of Eastgate; permanently enjoin, upon a hearing of the case, any sale of said property except under the supervision and direction of the court; liquidate Eastgate under the provisions of section 86 of the Illinois Business Corporation Act, and grant such other and further relief in the premises as may seem meet. On January 17, 1951, two days after an adjourned meeting of the stockholders of Eastgate at which the president announced that the sale to Fohrman had been authorized, a further pleading, entitled "Amendment to Complaint and Supplemental Complaint," hereinafter called amended and supplemental complaint, was filed. In effect it replaces the original complaint. All material allegations of that complaint are realleged verbatim or in amplified averments, almost all allegations

265

on information and belief are changed to direct statements of fact, and matters occurring before and after the institution of suit are added. January 19, 1951, plaintiffs' motion for a temporary injunction was denied. February 13, 1951, defendant Eastgate filed a written motion to dismiss plaintiffs' action on the following grounds: (1) Denial of plaintiffs' motion for temporary injunction constitutes a denial of all relief asked by plaintiffs; (2) The action should be dismissed pursuant to section 45 of the Civil Practice Act because plaintiffs' pleadings fail to state a cause of action and are without equity in that the basis of plaintiffs' action is that the sale price of the property of Eastgate is grossly inadequate, and not in alleged fraud, conspiracy, illegality or oppression; the action is barred by the provisions of sections 72 and 73 of the Business Corporation Act (Ill. Rev. Stat. 1949, chap. 32, pars. 157.72, 157.73) [Jones Ill. Stats. Ann. 32.074, 32.075]; plaintiffs failed to make a demand upon the board of directors of Eastgate prior to instituting suit to induce the remedial action sought by plaintiffs; (3) The action should be dismissed pursuant to section 48 of the Civil Practice Act because plaintiffs have not legal capacity to sue: (a) They are conclusively presumed to have consented to the sale to Fohrman because they did not make demand in writing upon Eastgate for payment to them of the fair value of their respective shares, as required by section 73 of the Business Corporation Act; (b) They lack legal capacity to sue in a derivative capacity because they did not make demand upon the directors of Eastgate prior to the institution of suit to procure the remedial action sought by plaintiffs. On February 26, 1951 plaintiffs filed another pleading, entitled "Amendment and Supplement to the Amendment to Complaint and Supplemental Complaint," hereinafter called amendment and supplement. By this pleading plaintiffs cured some

of the alleged defects pointed out in the motion to dismiss. Further allegations as a basis for relief were added. March 26, 1951 the motion to dismiss was amended by adding two grounds for dismissal under section 45 of the Civil Practice Act—objections that plaintiffs have not shown any right to maintain a class suit, and that the pleadings are multifarious—and one ground for dismissal under section 48 of the Civil Practice Act—that plaintiffs lack legal capacity to maintain a class suit. On the same day the motion to dismiss, as amended, was sustained, plaintiffs' pleadings were stricken and their suit dismissed. They appealed.

 Defendants caused to be included in the record of the trial court on appeal a transcript of proceedings on the motion for injunction consisting of approximately 110 typewritten pages of argument of counsel, statements of the court and testimony of plaintiffs' attorney (covering only three pages) relative to his unsuccessful efforts to get permission to disclose the name of a person whom he had stated would bid $650,000 for the property of Eastgate. They filed in this court an additional abstract of record of five pages of excerpts from that proceeding. Plaintiffs' motion to strike that abstract and all reference thereto in Eastgate's brief was reserved to hearing. The propriety of the court's order denying the motion for injunction is not before us. The only questions remaining on this appeal are the sufficiency of plaintiffs' pleadings and their legal capacity to sue, tested by Eastgate's motion to strike under sections 45 and 48 of the Civil Practice Act. The sufficiency of the pleadings must be determined by matters well pleaded, taken as true. The alleged want of legal capacity to sue must be determined from the face of the pleadings and affidavits filed under section 48 of the Civil Practice Act. The other ground for dismissal of plaintiffs'

action—denial of the motion for temporary injunction —is no longer in issue. It is not included in "Propositions to Sustain the Decree" or argued in Eastgate's lengthy brief. It is abandoned, presumably for want of merit. *Stubbs v. Austin,* 285 Ill. App. 535; *Nierodzinski v. City of Chicago,* 284 Ill. App. 598. Moreover, had it been argued here we would have been obliged to determine the question presented by reference to plaintiffs' prayer for relief and the order denying the injunction. The proceedings on the hearing of plaintiffs' motion for injunction are immaterial on this appeal. The motion to strike the additional abstract of record and all references thereto in Eastgate's brief, is allowed. *Oakdale Bldg. Corp. v. Smithereen Co.,* 322 Ill. App. 222.

█ The defendants are Eastgate; Mitchell Edelson, individually and as president and director of Eastgate; Herbert Kant, individually and as secretary of Eastgate; Carman S. Brown, B. G. Kilpatrick, Clarence Buettel, and Leslie Klawans, individually and as directors of Eastgate; Managers, Incorporated; Louis Silver, Benjamin F. Fohrman, Maurice L. Davis, and Emil Horween. Section 46 of the Civil Practice Act permits any amendment to set up a cause of action on any claim which was intended to be brought by the original pleading, provided, only, that it grew out of the "same transaction or occurrence." It is not necessary that the original pleading technically state a cause of action. *Graves v. Needham,* 379 Ill. 25. We must therefore disregard defendants' argument that the original complaint did not state a cause of action and determine plaintiffs' right to maintain their suit upon allegations in the amended and supplemental complaint, as amended and supplemented, of facts existing at the time suit was instituted. Plaintiffs' theory is that defendants Silver, Davis, Fohrman, Brown and Kilpatrick, or some of them, directly or indirectly own

or control a substantial block of the shares of Eastgate, and in addition thereto have voting control of other shares sufficient to give them at least a two-thirds voting control of the issued and outstanding stock of Eastgate; that the sale of all assets of the corporation, except cash on hand and accounts receivable to Fohrman, through the exercise of such voting control, is presumptively fraudulent; that the purchase price, $550,000, being in fact grossly inadequate, establishes actual fraud in the sale; that the directors and the majority stockholders and those associated with them in furthering the sale are trustees for the minority stockholders, who may sue in equity to enjoin the sale and for other appropriate relief.

The following facts are well pleaded and must be taken as true. Eastgate acquired title to the land and the 15-story and basement fireproof-hotel building thereon containing 224 guest rooms and accommodations incidental thereto, the subject matter of the proposed sale to Fohrman under a plan of reorganization in the United States District Court, Northern District of Illinois, Eastern Division, in the matter of Eastgate Building Corporation, proposed January 14, 1935, by exchanging one share of the common stock of Eastgate—par value $25—for an outstanding $100 first mortgage bond issued by debtor. The total authorized and issued capital stock of Eastgate is 9,256 shares of common stock. Plaintiffs doing business as Robert & Co., a partnership, are and since July 17, 1943 have been the registered owner and holder of 60 shares of said stock. Plaintiff Krafcisin is the registered owner and holder of 2 shares since October 14, 1948, and of 5 additional shares since September 3, 1950. Defendants Silver, Davis, Fohrman, Brown and Kilpatrick, and certain of their business associates, referred to as the Controlling Syndicate, in their own names or directly or indirectly

through nominees or through one or more corporations which they or some of them control, the names of which are unknown to plaintiffs, own or control a substantial block of shares of the common stock of Eastgate. In addition thereto they have voting control of other shares, sufficient altogether to give them at least two-thirds voting control of the issued and outstanding stock. The Controlling Syndicate or some of its members acquired working control of Eastgate in or about the year 1947 by the purchase of a large block of shares from one Abel Levy and his associates, and immediately thereafter they caused to be elected a new board of directors, a new president and secretary, consisting of defendant directors, president and secretary, and conspired together for the purpose of acquiring the property of Eastgate for themselves or some of them at a price substantially below its true market value. The Controlling Syndicate caused a reduction of the net profits, after income taxes, from $28,157 in 1946 and $32,436 in 1947, to $5,392 in 1948 and $4,232 in 1949 by almost doubling the amount expended for repairs and maintenance of the building; they caused the directors and officers of Eastgate to reduce dividends to the shareholders from $2.50 per share in 1944 and 1945 and $2.75 per share in 1946 and 1947, to $1.00 per share in 1948, 1949 and 1950; they caused an amendment of the managing contract with defendant Managers, Incorporated (owned and controlled by defendant Silver), to permit termination of the contract only upon a written notice 30 days prior to December 31st of any year instead of on 90 days' written notice at any time, as originally provided in the contract approved by the United States District Court. By these acts the Controlling Syndicate or some of them acquired additional shares of the common stock of Eastgate at prices below the true value of such shares for the purpose of ultimately

obtaining two-thirds voting control of Eastgate and accomplishing their objective. Upon acquiring voting control, approximately two-thirds, the Controlling Syndicate caused to be mailed December 8, 1950 to the shareholders of record a notice of a special meeting of shareholders of Eastgate to be held December 27, 1950 for the following purposes: (a) To consider and vote upon the sale, pursuant to the offer of defendant Fohrman dated November 29, 1950, to purchase for the sum of $550,000 in cash, the Eastgate Hotel, including the personal property contained therein, and the sale to him of the merchandise belonging to Eastgate intended for resale at retail, at the lower of cost or market price prevailing at the time of conveyance of the hotel and personal property contained therein; (b) To consider the advisability of voluntarily dissolving and winding up the affairs of Eastgate in the event of a sale of the hotel and personal property referred to in paragraph (a) above. The notice further recited that only shareholders of record as of the close of business December 8, 1950 would be entitled to vote.

Attached to and a part of the notice was a report of the defendant president of Eastgate on the Fohrman offer in which he stated that George Becker, a real estate appraiser and consultant employed by Eastgate, appraised the land, building, furniture and furnishings of Eastgate on November 13, 1950 at the fair market value of $610,000; that the net profits, after income taxes, for the years 1948 and 1949 amounted to $5,392 and $4,232 respectively as compared with the years 1946 and 1947 when they amounted to $28,157 and $32,436 respectively, a condition resulting from the constantly increasing costs of labor, materials, real estate taxes, furnishings and supplies necessary to the operation and maintenance of Eastgate without corresponding increases in its receipts; that the directors were of the opinion that the general trend was toward

271

further increases in such costs; that in the circumstances, and having in mind the appraisal, the reduction in operating profit and current conditions, the board of directors has recommended and directed that said offer be submitted to the shareholders for their consideration. Enclosed with the notice and president's report was a form of proxy appointing defendants Brown and Kilpatrick, and each of them (with full power to act without the other) to vote in favor of the proposed sale to Fohrman, "or in such manner as said proxies may deem advisable upon any other offer for the purchase of the foregoing that may be presented to said meeting, or at any adjournment or adjournments thereof."

The offer of $550,000 is grossly inadequate; the property has a minimum market value of $750,000, a price which would yield the shareholders in excess of $80 per share instead of approximately $60 per share as stated in the president's report; no action was taken by the defendant directors and officers of Eastgate to inform the public that the property was for sale; there was no advertising for competitive bids; after several verbal refusals by defendant Edelson, president of Eastgate, to permit plaintiff shareholders access to the list of shareholders of Eastgate, a written demand was made by plaintiffs doing business as Robert & Co., upon defendant Edelson on December 23, 1950 for access by them to the list of shareholders; Edelson refused the demand and stated that access to the list would not be granted. In plaintiffs' demand it was stated: "The purpose of the examination is to secure excerpts of the list disclosing the names and addresses of holders of shares not owned or controlled by Mr. Louis Silver (defendant), or by any director or officer of your corporation, in order to communicate with such independent shareholders by mail, telephone or telegraph, as may be most eco-

nomic and expeditious, . . . with respect to the concentration of shareholdings presently owned or controlled by said Louis Silver; and to further inform the independent shareholders . . . with respect to the offer of Benjamin F. Fohrman, referred to in notice dated December 8, 1950 of Special Meeting of shareholders of said corporation and to urge said independent shareholders to withdraw their proxies before said Meeting so that the proposed sale may not be authorized''; the refusal to give plaintiffs access to the list of stockholders made it impossible for plaintiffs to inform minority shareholders similarly situated to plaintiffs of the matters stated above.

Further averments relate to matters occurring after the institution of suit on December 27, 1950, including the events of the special meeting of stockholders on that day and the adjourned meeting of January 15, 1951 when the president declared that the proposed sale to Fohrman had been authorized by the affirmative vote of 6,698 shares, of which 751 were voted by defendant Kilpatrick, as proxy. (The 67 shares held by plaintiffs were voted against the sale.) They also relate to the character in which plaintiffs sue—in their own right, for the use and benefit of the shareholders whose interests are identical with plaintiffs' and whose names are unknown because of the illegal refusal of defendants to make available to plaintiffs a list of shareholders, and on behalf of defendant Eastgate. In respect to action on behalf of Eastgate, plaintiffs aver that because of the facts alleged in the amended and supplemental complaint, demand on the defendant directors and officers of Eastgate to cause an action to be brought on behalf of Eastgate based on the causes of action stated in the complaint would be futile. The prayer of the amended and supplemental complaint is that defendants be temporarily and permanently enjoined from taking any action to complete the sale

273

to Fohrman; that the court order a public auction of the property of Eastgate; the court liquidate the assets and business of Eastgate pursuant to section 86 of the Business Corporation Act of Illinois; any deed or other document purporting to transfer title of the property of Eastgate to Fohrman or designed to facilitate acceptance of his offer or a sale to him, be delivered to the court for rescission and cancellation; the appointment of a receiver; the court find that the offer and proposed sale to Fohrman is illegal, fraudulent and detrimental to the rights and interests of Eastgate, the plaintiffs and other minority shareholders; defendant be required to disclose the names of the shareholders of Eastgate, and particularly the names of the shareholders alleged to have voted in person or by proxy to approve the ·resolution that Eastgate accept the Fohrman offer; the respective dates of acquisition of shares voting in favor of the sale and the cost of such shares; plaintiffs have such other relief as the court may deem just and proper.

 Affirmative action and approval by the directors as well as the shareholders was necessary to a valid sale to Fohrman. Section 72 of the Business Corporation Act requires that the directors recommend the sale and that they then direct its submission to a vote of the shareholders; that the shareholders authorize it by an affirmative vote of two-thirds of the outstanding shares entitled to vote. The board of directors may in its discretion abandon the sale after its authorization by the shareholders. In recommending a sale of corporate assets and submitting it to a vote of shareholders, the directors are trustees of all the shareholders, large and small. The majority shareholders do not by the mere reason of their holdings thereby become trustees for the minority stockholder in voting on a sale of assets. However, equity will impose upon them the obligation of trustees if

274

in forcing disposition of assets they overreach the minority stockholders and reap benefits in which the minority does not share. The action of the majority must be fair to the corporation and to all stockholders, for the majority becomes in effect the corporation itself and charged with the trust obligations thereof. *Lebold v. Inland Steamship Co.*, 82 F. (2d) 351 (C. C. A., 7th Cir.). In *Winger v. Chicago Bank & Trust Co.*, 394 Ill. 94, the court pointed out that in actions of fraud against those not occupying a fiduciary relation, the fraud must be proved by those asserting it, but that in actions against fiduciaries, as in sales of corporate property to directors, which are presumptively fraudulent, the burden is on the fiduciary to prove affirmatively compliance with equitable requisites to overcome the presumption of fraud. The court said (p. 110): "With this distinction in mind, it will be perceived that directors of a corporation cannot purchase from themselves. The rule has been applied even to the extent that majority stockholders cannot overreach minority stockholders in authorizing a sale to themselves, or one who represents them, (*Chicago Hansom Cab Co. v. Yerkes*, 141 Ill. 320– 335)." The latter case was a suit by Yerkes, a minority stockholder, to set aside a sale and conveyance of the real estate and personal property of the cab company to Rose Abernethy, a niece of defendant Springer, who had purchased or contracted to purchase all shares of the company except those owned by Yerkes. Springer had also entered into a contract with Needham, a director and secretary of the corporation, under the terms of which the property was to be purchased and conveyed to Abernethy for their benefit, Springer to receive the real property and Needham the personal property. A stockholder whose stock Springer had contracted to buy, and nominees of Springer holding stock purchased by him, ratified

275

the sale at a meeting of stockholders. Directors selected by Springer also took action tending to ratify the sale. The relief prayed was allowed. In affirming the decree the Supreme Court said (p. 335):

"It is a general rule, administered by courts of equity, that where one person has the power of disposition of the property of another without the consent of that other, he shall not be allowed to become personally interested in it himself,—and this without regard to any question of fairness in the immediate transaction,—for he shall not be allowed to occupy a position where self-interest would tempt a betrayal of duty. This rule is plainly applicable here, and it has been so applied in adjudicated cases. It is said in Cook on Stockholders, sec. 656: 'It is illegal and fraudulent for the majority of the stockholders to purchase the property of the company at a sale authorized by themselves. Such a purchase by the majority may be set aside in the same way and to the same extent that a purchase of corporate property by a director may be set aside.' "

 Defendants contend that the rights of dissenting stockholders in the event of a sale of corporate assets for an inadequate price under section 72 of the Business Corporation Act, are limited to the remedy provided in section 73 of the Act; that plaintiffs having failed to take the steps required therein within the time fixed therein, all right of action is barred. This section requires the dissenting shareholder to file a written demand on the corporation for the payment to him of the fair value of his shares within 20 days after the vote taken authorizing the sale, and, if agreement is not reached as to the value of the shares within 40 days after the vote so taken, to file within 60 days after the expiration of said 40 days a petition in court for a finding and determination of the fair value of such shares under penalty of being

conclusively presumed to have approved and ratified the sale and being bound by the terms thereof if such demand is not made within 20 days or petition filed within 100 days after the vote authorizing the sale. In *Opelka v. Quincy Memorial Bridge Co.*, 335 Ill. App. 402, plaintiffs attacked the sale of the company's bridge and the distribution of the proceeds of sale. Its complaint in equity was dismissed on motion. This action was reversed and the cause remanded. It was contended by defendants that the remedy provided by section 73 of the Business Corporation Act was exclusive. The court said (410-411):

"As to whether the provisions of section 73 furnish an exclusive remedy, it appears that such is not the case where, as here, charges of fraud and illegality are involved. This rule seems established by the very cases cited by defendants. (*Adams v. United States Distributing Corp.*, 184 Va. 134, 34 S. E. (2d) 244; *Hubbard v. Jones & Laughlin Steel Corp.*, 42 F. Supp. 432; *Root v. York Corp.*, 56 F. Supp. 288; *Langfelder v. Universal Laboratories, Inc.*, 68 F. Supp. 209; *Wall v. Anaconda Copper Mining Co.*, 216 Fed. 242.) The subject is discussed in Fletcher Cyclopedia Corporations at page 5893 [§ 5893, p. 250], as follows:

"'As to this (right to valuation of stock and payment as exclusive remedy) there seems to be some conflict in the decisions. In some cases, this statutory remedy has been held to be exclusive, but in most of the decisions the contrary view is sustained, unless the statute otherwise expressly provides. For instance, according to the latter view, a dissenter may set aside the act of the majority where it is irregular or unauthorized, or is fraudulent, and it was held that minority shareholders by accepting the distributive shares of proceeds of a dissolved company were not estopped to prosecute a suit to recover damages for fraudulent acts in dissolving the company and appropriating its

277

business. But the failure of a stockholder to resort to an appraisal may impair his equities to maintain a stockholders' suit.' "

In the earlier case of *Jones v. St. Louis Structural Steel Co.*, 267 Ill. App. 576, cited by defendants, no question of fraud or illegality was involved. It was an action at law by a stockholder to recover the value of preferred stock held by him in a Delaware corporation before its merger with another Delaware corporation. The court held that the consolidation was in accordance with the laws of Delaware, and plaintiff was not entitled to recover. It said, "If appellee had averred and proved an illegal merger, or fraud, a different question would be presented." Section 73 provides an adequate remedy where the dissenting stockholders' only complaint is the inadequacy of the price received and whose only claim is for money damages—the fair value of his shares. It is not a full and adequate remedy where fraud is charged. In such cases a court of equity may go beyond the mere assessment of damages and rescind the sale, as was done in *Chicago Hansom Cab Co. v. Yerkes, supra*. Fraud is an independent ground for the exercise of equitable jurisdiction. *Aldrich v. Harding*, 340 Ill. 354. That jurisdiction of equity courts is preserved by the constitution (art. 6, sec. 12), and the legislature cannot deprive them of any part of it. *Stephens v. Chicago, B. & Q. R. Co.*, 303 Ill. 49. The construction contended for by defendants would deprive courts of equity of this jurisdiction and render section 73 unconstitutional. *Peoples Gas Light & Coke Co. v. Slattery*, 373 Ill. 31, 47.

 Defendants further contend that plaintiffs cannot sue on behalf of the corporation because of failure to make demand on the corporation before instituting suit or alleging facts excusing the demand. The amended and supplemental complaint states that

278

because of the facts alleged therein, demand on the defendant directors and officers of Eastgate to cause an action to be brought on behalf of the corporation would be futile. This pleading charges that directors Brown and Kilpatrick are members of the Controlling Syndicate; that Edelson, the president and director, illegally refused to give plaintiffs access to the list of stockholders to enable them to communicate with other stockholders in an effort to defeat authorization of the sale to Fohrman; that the Controlling Syndicate caused the sending of the notice of the meeting of stockholders at which the Fohrman offer would be considered and voted upon. This notice was by direction of the directors after the directors (if they complied with the statute, which must be assumed) had recommended and approved the sale to Fohrman. These allegations show that the majority, if not all of the directors, were active participants in the conspiracy charged. Demand was unnecessary because it would have been futile. As said in *Chicago Hansom Cab Co. v. Yerkes, supra,* "The directors of the corporation were in the interest and under the control of Springer, so that a demand upon the corporation to bring suit against him would have been unavailing, and the suit is properly brought by Yerkes." See also *Harding v. American Glucose Co.,* 182 Ill. 551, 629.

 Defendants complain that plaintiffs represent no one but themselves. They shut their eyes to the fact that Edelson by his refusal to give plaintiffs access to the list of stockholders, prevented communication with other stockholders. Until plaintiffs have had an opportunity to advise other stockholders of the grounds of complaint stated herein, it cannot be determined how the stockholders will respond and how many will take sides with plaintiffs. Defendants attempt to justify refusal to permit access to the stockholders' list on the ground that demand for inspection

279

of the list did not show that the attorney for plaintiffs was authorized by his clients. This contention is decided adversely to defendants in *Crouse v. Rogers Park Apts., Inc.,* 343 Ill. App. 319.

▬▬▬▬ The amended and supplemental complaint as amended and supplemented is not multifarious. All relief prayed for grows out of the same transaction—the conspiracy of the Controlling Syndicate to acquire the property of Eastgate at less than its market value. Taking the complaint as true, as we must on this appeal, the commission to be paid to defendant Horween is not only an unnecessary expenditure of corporate funds, but it is a smoke screen designed to conceal the fact that the sale to Fohrman is in reality a sale to and for the benefit of the Controlling Syndicate and not to a stranger. The amendment of the managing contract with Managers, Incorporated, is alleged to be in furtherance of the conspiracy. Until an answer is filed denying the charge, it must be taken as true.

▬▬▬▬ A cause of action existing at the time suit was started is properly stated in plaintiffs' pleadings. Matters arising since that time have been properly alleged in supplemental pleadings and state grounds for other and additional relief. The order appealed from is reversed and the cause remanded with directions to overrule the motion to strike, and for further proceedings in accordance with this opinion.

*Reversed and remanded with directions.*

BURKE, P. J. and FRIEND, J., concur.