No. 2--09--0329

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| HERBERT W. FRITZSCHE, FRITZSCHE INDUSTRIAL PARK, INC., PARK NATIONAL BANK, u/t/a No. 1748, and FIRST MIDWEST BANK, u/t/a No. 4484, | ) ) ) ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 06--CH--1041 |
| GREGORY LaPLANTE and M. CHRISTINE ROCK, | ) ) ) | Honorable Michael T. Caldwell, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the opinion of the court:

On August 1, 2006, defendant M. Christine Rock, purportedly acting as secretary/treasurer of the family corporation, plaintiff Fritzsche Industrial Park, Inc. (FIP), and as power of attorney (POA) for her father, plaintiff Herbert W. Fritzsche, signed a lease agreement (the Lease) with her live-in boyfriend of several years, defendant Gregory LaPlante. The Lease named FIP as lessor and Gregory as lessee, and the premises included 16 properties within the Fritzsche Industrial Park, in addition to 10 other properties presumably owned by Herbert individually. On August 8, 2006, Christine, again purportedly acting as secretary/treasurer of FIP, signed a promissory note (the Note) to Gerald Shaver (not a party to this appeal) in the amount of $450,000 as compensation for work that Shaver had previously performed for Herbert and/or FIP. The Note named FIP (and Park

National Bank as trustee of land owned by Herbert personally under land trust No. 6004) as the "Maker" and "constitute[d] a lien upon all assets of Maker." On March 30, 2007, Herbert, FIP, Park National Bank, u/t/a No. 1748, and First Midwest Bank, u/t/a No. 4484 (trustees of several of the FIP properties included in the Lease) filed a complaint against defendants, essentially alleging that Christine acted without corporate authority in entering into the Lease and the Note. On May 7, 2007, defendants entered a general denial. On December 4, 2008, plaintiffs moved for summary judgment, seeking a declaration that both the Lease and the Note were void. On February 27, 2009, following oral argument, the trial judge granted plaintiffs' motion and voided both the Lease and the Note. We affirm.

## I. BACKGROUND

### A. The Fritzsche Family and Their Corporation

FIP is a closely held family corporation and its purpose, as stated in its articles of incorporation, is "[t]o engage in the business of buying, selling, managing, leasing[,] and developing real estate, and all matters related thereto." Its principal place of business is in Lakemoor, Illinois, where it operates an industrial park. Among the tenants in the industrial park are John Deere and "db3 Broadband." The Fritzsche family has owned the industrial park for several decades, but FIP was formally incorporated on December 14, 2005. On January 17, 2006, FIP held its first meeting of the board of directors (Board) and nominated the following officers therein:

| Officer | Office |
| --- | --- |
| Herbert W. Fritzsche (father) | President |
| Scot A. Fritzsche (son) | Vice President |
| M. Christine Rock (daughter) | Secretary/Treasurer. |

As set forth in the minutes of the January 17, 2006, meeting, the corporation's 1,000 shares of stock were divided as follows:

| Owner | Number of Shares |
|---|---|
| Herbert W. Fritzsche (father) | 685.0 |
| Nancy Corpron (daughter) | 75.0 |
| M. Christine Rock (daughter) | 60.0 |
| William C. Fritzsche (son) | 45.0 |
| Robert L. Fritzsche (son) | 30.0 |
| Scot A. Fritzsche (son) | 30.0 |
| Donna M. Levy (granddaughter) | 12.5 |
| Robert J. Levy (relationship unclear) | 12.5 |
| Jason M. Levy (relationship unclear) | 12.5 |
| Matthew Levy (relationship unclear) | 12.5 |
| Eric C. Levy (relationship unclear) | 12.5 |
| Kimberly A. Ferguson (relationship unclear) | 12.5 |

1,000.0 Total Shares.

On July 10, 2006, at the age of 89, Herbert Fritzsche suffered a brain hemorrhage. After two weeks of hospitalization and one week in a neurological rehabilitation center, Herbert moved from his private residence in Lakemoor to live in Downers Grove with Donald Levy, his son-in-law. Herbert's level of competency following his brain hemorrhage remains in question, though Christine later attested that his mental facilities were "significantly compromised." Two of Herbert's children, Nancy and Scot, moved from Virginia into the Levy residence to be with their father and remained

there as of the trial court's disposition of this case. Two of Herbert's other children, Robert and William, came to visit immediately following the incident but continued to live out of state. Christine and Gregory ultimately moved into Herbert's Lakemoor residence.

B. The Lease

On August 1, 2006, Christine, purportedly acting in her capacity as secretary/treasurer of FIP and as POA for Herbert, signed the Lease. The Lease named FIP as the lessor and Gregory as the lessee. The Lease's term was "5 YEARS w/ three 5 YEAR OPTIONS TO RENEW." The Lease contained no information about how the options to renew could be exercised.

The stated purpose of the Lease and/or property was "Business-Industrial at premises located at 550 Sheridan-400 Fritzsche, Resort and mixed use at all other premises." The location(s) of the premises were further detailed in "Attachment A," which was appended to the back of the Lease. Attachment A listed 26 property index numbers (PINs) and legal descriptions of said PINs, 16 of which seem to be single lots/buildings within the Fritzsche Industrial Park, but some of which seem to be residential properties in Lakemoor and some of which are described as "sign easements" on larger plots of land (i.e., presumably the "Resort" and "all other premises" referred to in the purpose statement).

Under the heading "Yearly Rent," the Lease states that the rent shall be "Property Taxes assessed on Attachment A and 10% of the Resort's Net Profit." (Emphasis added.) However, within its text, the Lease gives at least two slightly varied definitions of rent: (1) "10% of the net income of the Leased Properties [as opposed to the Resort only], and *** property taxes assessed to those properties in Attachment A, with the exception of those properties listed under 'sign easements' " and (2) "10% of the net income of the Lessee [as opposed to the Leased Properties or the Resort only]."

In exchange for this "rent," FIP was to give Gregory possession of the premises listed in Attachment A, as well as all equipment and supplies contained therein.

## C. The Note

On August 8, 2006, Christine, this time acting only under her purported authority as FIP secretary/treasurer, signed a note to Shaver in the amount of $450,000. The record contains very little information about the circumstances surrounding the Note, except that the parties generally set forth that the Note was meant to compensate Shaver for work that he had done on the property. Apparently, Shaver owns a business called "Gerry Shaver Trucking and Excavating" and he had previously performed services for FIP, allegedly at the request of Christine and Gregory. The critical passages of the Note state:

> "FOR VALUE RECEIVED, Fritzsche Industrial Park, Inc., and Park National Bank as Trustee under Land Trust [No.] 6004, (hereby collectively called the 'Maker'), hereby jointly and severally promise to pay to the order of Gerald Shaver, the principal sum of Four Hundred Fifty Thousand Dollars ($450,000.00), payable in lawful money of the United States of America on Demand.

> * * *

> This note shall constitute a lien upon all assets of Maker and Makers acknowledge and agree that the debt memorialized in this Promissory Note shall be non-dischargeable in any bankruptcy proceeding.

> The liability of the Maker under this Note is joint and several." (Emphases added.)

The Note contained a signature line for both FIP and Park National Bank as trustee, but only the FIP line was signed--by Christine as secretary/treasurer.

Shaver was not a party to these proceedings at the trial court level (nor is he a party on appeal). Neither party explains his absence.

### D. Litigation

#### 1. The Complaint

On November 8, 2006, plaintiffs filed a complaint, and later, on March 30, 2007, they filed an amended verified complaint. Plaintiffs essentially alleged that Christine acted without corporate authority in entering into the Lease and the Note and without any authority as Herbert's POA in entering into the Lease.

Regarding the POA, plaintiffs alleged that, in 1999, Herbert had named Christine POA without limitation. However, in the year preceding the filing of the instant action, disputes arose between Herbert, Christine, and other family members. There were general accusations that Christine had been using rents submitted by tenants at the industrial park to pay her and Gregory's personal expenses. On July 20, 2006, while in the hospital recovering from his brain hemorrhage, Hebert signed a written revocation of the POA, which his attorney attempted to deliver to Christine. According to the complaint, on July 31, 2006, Herbert delivered an oral revocation of the POA, which was witnessed by his children, Nancy, Robert, and Christine; Gregory; Herbert's attorney, Jay Dolgin; a Village of Lakemoor trustee, Colin McIntyre; and Michael Poper (role unclear).

Regarding Christine's position as secretary/treasurer of FIP, plaintiffs alleged that, in the year preceding the filing of the instant action, Christine refused to provide the shareholders with accounting records for FIP rents and expenses. The shareholders informed her that she would be removed as secretary/treasurer no later than May 10, 2006. Plaintiffs attached to their complaint a corporate resolution, dated April 17, 2006, signed by Nancy Corpron as (presumably the new)

member of the Board, which stated that Christine was removed from her position as secretary/treasurer.

Regarding the events surrounding the creation of the Lease, plaintiffs alleged that, in July 2006, Herbert informed Christine that he was unhappy with her and Gregory's actions and that he did not want Gregory to have any involvement with FIP. Regarding the Lease's legality, plaintiffs asserted the Lease was void because: (1) the terms of the Lease, specifically those involving "rent," are too vague to be enforced and (2) Christine was without authority to enter into the Lease. Regarding the Note, plaintiffs alleged that Christine was without the "proper corporate authority or position" to execute the Note. Plaintiffs further alleged that the Note was a debt instrument that would subject FIP to claims by Shaver.

Plaintiffs made additional allegations that are not as critical to the instant appeal, regarding the strain and confusion that the Lease placed on the tenants of the industrial park. Apparently, tenants were confused about to whom they should pay rent (Gregory or FIP). Additionally, as set forth in plaintiffs' subsequent motion for the appointment of a receiver, which the trial court granted, this apparent strain and confusion nearly caused certain tenants to leave the industrial park.

On May 8, 2007, defendants entered a general denial of plaintiffs' complaint. Between May 2007 and December 2008, the parties filed several motions, largely pertaining to discovery requests.[1]

---

[1]As an aside, in April 2007, the trial court issued a warrant for defendants' arrest. Christine was charged with two counts of financial exploitation of an elderly person (720 ILCS 5/16--1.3(a) (West 2006)), theft by deception (720 ILCS 5/16--1(a)(2)(A) (West 2006)), and conspiracy to commit theft (720 ILCS 5/8--2 (West 2006)). Gregory was charged with theft by deception and two counts of theft (720 ILCS 5/16--1(a)(2)(A) (West 2006)). One year later, in May 2008, defendants

## 2. Motion for Summary Judgment

On December 4, 2008, plaintiffs moved for summary judgment. For the purposes of their motion, plaintiffs set aside the issue of whether Christine had been properly removed as POA via Herbert's written and oral revocation and as secretary/treasurer via the April 2006 resolution. They asserted that, even if Christine had been the secretary/treasurer of FIP and Herbert's POA, she still would not have had the authority to enter into the Lease or the Note.

Regarding the Lease, plaintiffs argued that it was void as unenforceable because it was impossible to calculate the rent amount where the Lease did not define with precision the term "rent."

Additionally, plaintiffs argued that Christine did not have the authority to enter into the Lease under either the common law or a statute. Specifically, plaintiffs stated that Illinois common law does not allow for the assignment of corporate acts typically performed by the president that involve the exercise of discretion. Moreover, plaintiffs asserted that the Lease was an "extraordinary and unusual" contract such that, assignment aside, Illinois common law would not allow Herbert himself to enter into the Lease without the Board's consideration and vote. Plaintiffs then alleged that Christine violated provisions of the Business Corporation Act of 1983 (Act) (805 ILCS 5/11.60, 11.65, 11.70 (West 2006)) when, without authorization by the Board and without written notice to the shareholders, she entered into a lease that involved "substantially all" of FIP's assets, outside the usual and regular course of business.

---

filed a motion to stay the civil proceedings, arguing that further proceedings in civil court would be hampered by fifth-amendment issues in the pending criminal case. The trial court denied the motion to stay. The record provides no further information regarding the outcome of the criminal case.

Regarding the Note, plaintiffs stated that: (1) FIP's bylaws prohibited the execution of loans and other evidences of indebtedness unless authorized by the Board; and (2) as with the Lease, both Illinois common law and its statutes prohibit an officer from entering into extraordinary and unusual contracts and/or contracts involving substantially all of the corporation's assets, outside the ordinary course of business, without the board's consideration and vote.

Plaintiffs attached Nancy Corpron's affidavit, which stated that, at no time during 2006, or at any other time, did the FIP shareholders or the Board meet to vote on the Lease or the Note. Nancy also stated that the Board never authorized Christine to act on behalf of FIP with regard to the Lease or the Note. Plaintiffs also attached Donna Levy's affidavit, which stated that the FIP bylaws submitted into the record were a true and correct copy of said bylaws.

On February 10, 2009, defendants filed a response to plaintiffs' motion for summary judgment. In it, and through Christine's attached affidavit, they presented a different perspective on the family business and the events leading up to the creation of the Lease and the Note. They alleged that, for decades prior to 1990, the family had run another business known as Fritzsche Industrial Park, Inc., but that, in 1990, that corporation was involuntarily dissolved by the Illinois Secretary of State. Christine and her siblings had been shareholders in that corporation as well, but, as far as Christine could recall, they did not follow corporate formalities. In 1991, at Herbert's request, Christine moved to Lakemoor to assist him in managing the properties that had been held under the first corporation. At the time, the properties were financially distressed. In 2004, Herbert typed, but did not sign, a letter to his son William, which discussed the industrial park's development and referred favorably to Christine's commitment:

"I [felt] that staying here and developing the Park would be of much greater advantage to the whole family. In this I feel that I was right, the only thing that I did wrong was putting my faith in the family as a whole. Apparently no one really felt that putting their effort into this project was worth the effort--that is [sic]. Until Chris has come along to pick-up the pieces."

Defendants attached this letter to the response and stated that "underlying the [Lease] was a plan and effort to promote and develop the property as [Herbert] dreamed."

Though plaintiffs set aside questions concerning the legitimacy of Christine's POA and position as secretary/treasurer for the purposes of summary judgment, defendants addressed the matter. Defendants disputed the allegation in the complaint that Christine's POA had been revoked prior to the execution of the Lease and the Note. Christine attested that the signature on the written revocation was not her father's. Christine also attested that her father was cognitively impaired following the hemorrhage.[2]

Additionally, defendants disputed the allegation in the complaint that Christine had been removed from her position as secretary/treasurer prior to the execution of the Lease and the Note. Defendants alleged that plaintiffs' complaint fraudulently represented to the court that Christine was removed from her corporate position on April 17, 2006, as set forth in plaintiffs' attached resolution. In support of their position, defendants attached the letter dated September 8, 2006, from Herbert's

---

[2]However, in a letter from Herbert's attorney dated September 8, 2006, which defendants attached to the response because it weighed in their favor on the issue of whether Christine remained the secretary/treasurer during the relevant period, the attorney noted that Christine had recently informed him that her father was not incompetent, thus raising the issue of whether Christine could properly exercise the POA even if it had not been revoked.

attorney. In it, the attorney notified Christine of an upcoming special joint meeting of the FIP shareholders and the Board wherein the shareholders would seek to remove Christine as a Board member and as an officer of FIP. In defendant's view, the import of this notification was that, if Christine was notified of a pending removal in September 2006, she could not have been removed in April 2006.

Regarding plaintiffs' substantive arguments that the Lease was void, defendants disagreed that the terms of the Lease were so vague as to render the Lease unenforceable. They admitted that the Lease defines the rental amount in "three slightly modified ways," but they stated that "the court certainly can ascertain the meaning of this rental term without stretching to do so." Defendants clarified that the rental amount is "clearly *** 10% of the net profit [Gregory] was to generate on his Resort activity on the property: beach, fishing, camping, events[,] and entertainment activities."

Additionally, defendants argued that Board approval and other corporate formalities were not required in order for Christine to enter into the Lease. Defendants stated that some of the properties included in the Lease were not owned by FIP but were owned by Herbert or other members of the Fritzsche family personally and that, therefore, transactions regarding said property would not trigger corporate formalities. As to the property owned by FIP, defendants stated that the Board had already given Herbert the general authority to enter into contracts such as the Lease and that Herbert could delegate that authority to Christine both as secretary/treasurer and as his POA.[3] Defendants further argued that a question of fact remained as to whether the Lease constituted an unusual or

---

[3]At times, defendants seem to argue that Christine acted as POA only in handling Herbert's property included in the Lease; at other times, defendants seem to argue that Christine also acted as POA in handling FIP's property.

extraordinary contract or was otherwise outside the usual course of business so as to trigger common-law and statutory requirements of Board authorization.

Finally, defendants, without conceding that any such procedures were necessary and without providing many details, argued that the Board did follow corporate procedures, noting that the shareholders were apprised of the impending Lease because they discussed it in e-mails.[4] They further argued that, in any case, any vote by the Board and/or the shareholders would necessarily result in the authorization of the Lease because Christine, together with Herbert (on behalf of whom she was acting), comprised two of the three Board members and a majority of the shares.

Regarding plaintiffs' substantive arguments that the Note should be voided, defendants argued that because plaintiffs did not specify in their complaint that they sought nullification of the Note, the motion for summary judgment should be denied as to the Note. Defendants cited section 2--604 of the Code of Civil Procedure (Code), which states in part that "every complaint *** shall contain specific prayers for the relief to which the pleader deems himself or herself entitled." 735 ILCS 5/2--604 (West 2006).

Alternatively, defendants asserted that Christine did have the authority to enter into the Note for the same reasons she had authority to enter into the Lease. Defendants again contended that Christine did, in any case, follow proper corporate procedures.

---

[4]The referenced e-mails did not mention an official lease and made casual reference to Gregory's involvement with the corporation. William, in a lengthy e-mail criticizing the family and Gregory ("How does Greg plan on building a house with no money, no job, and no credit?"), stated in a context that could be characterized as sarcastic, "Save time and just give it all to Greg. He's the only one to come up with a real plan to profit from the business anyway."

On February 27, 2009, plaintiffs filed a reply, reiterating many of their earlier arguments. That same day, following oral argument, the trial court granted plaintiffs' motion for summary judgment. The trial court acknowledged that some questions of fact remained, such as: (1) whether Christine retained her position as secretary/treasurer and as POA when the Lease and the Note were executed; (2) whether the Lease constituted an arm's-length transaction between FIP and Gregory; and (3) several questions concerning the terms in the Lease, like the rental amount, the mechanism by which the options to extend the Lease could be exercised or discontinued, and whether the land at issue in the Lease was owned by FIP or by Herbert personally. However, the court stated that none of these questions were material so as to preclude summary judgment.

The court held that, as a matter of law, Christine did not have the authority, either by her corporate position or by her position as POA, to enter into the Lease and the Note on behalf of FIP. The court stated that there was no question that substantially all of FIP's assets were included in the Lease (which, therefore, required Board approval under the Act). Moreover, the court found that, as a matter of law, "the execution of a half-million dollar note under the circumstances of this case was not in the ordinary course of business" (and, therefore, required Board approval under the Act). The court stated that it was undisputed that the Board never approved either the Lease or the Note, presumably giving no credence to defendants' intimation that the referenced e-mails could somehow substitute for Board approval. For those reasons, the court voided both the Lease and the Note. Defendants appeal.

## II. ANALYSIS

On appeal, defendants argue that the trial court erred in granting summary judgment to plaintiffs by finding that, as a matter of law, Christine did not have the authority to enter into either

agreement without Board approval and that, therefore, the Lease and the Note should be voided. We review grants of summary judgment de novo. Ioerger v. Halverson Construction Co., 232 Ill. 2d 196, 201 (2009).

Summary judgment is appropriate only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005 (West 2006); Ioerger, 232 Ill. 2d at 201. In reviewing a grant of summary judgment, we must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. Williams v. Manchester, 228 Ill. 2d 404, 417 (2008). Summary judgment is a drastic means of disposing of a case and should not be granted unless the movant's right to judgment is clear and free from doubt. Forsythe v. Clark USA, Inc., 224 Ill. 2d 274, 280 (2007).

The sole function of a trial court in acting upon a motion for summary judgment is to determine whether a material question of fact exists, not to resolve the question. Herrschner v. Xttrium Laboratories, Inc., 26 Ill. App. 3d 686 (1975). In deciding a motion for summary judgment, the court may draw inferences from undisputed facts to determine whether a genuine issue of material fact exists. Loyola Academy v. S&S Roof Maintenance, Inc., 146 Ill. 2d 263, 272 (1992). However, where reasonable persons could draw divergent inferences from undisputed facts, the issue should be decided by a trier of fact and the motion for summary judgment should be denied; the court does not have any discretion to decide the matter on summary judgment. Loyola, 146 Ill. 2d at 272.

We find that, even in light of the high burden placed upon plaintiffs seeking summary judgment, the trial court correctly determined that, as a matter of law, Christine did not have the authority to enter into either the Lease or the Note.

A. The Lease

Defendants first argue that questions of fact remain as to whether the Lease was the sort of transaction that required corporate formalities such as Board approval and/or shareholder notice. This question supersedes any question concerning which corporate tasks may be delegated from president to secretary/treasurer, as well as any question concerning the general authority of a secretary/treasurer or the authority of a POA to act in corporate matters. This is so because, if Board approval and/or shareholder notice were required, then <u>no</u> corporate officer, including Herbert himself, as president of FIP, could have entered into the Lease without following the appropriate corporate procedures.

Defendants cite FIP bylaws in support of their argument that an officer may be authorized to enter into a contract on behalf of the corporation:

> "Article V, Section 1. CONTRACTS. The board of directors may authorize any officer or officers, agent or agents, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the corporation, and such authority may be <u>general</u> or confined to specific instances." (Emphasis added.)

For reasons that are unclear, defendants seem to argue that the Board gave Herbert as president the <u>general</u> authority to enter into contracts and that, therefore, he would not have needed authority to enter into the specific Lease.

Defendants do seem to acknowledge that Board approval and other corporate formalities would be required if the specific Lease were unusual or extraordinary (common-law standard) <u>or</u> outside the usual course of business, involving substantially all of the corporation's assets (statutory

standard).[5] However, they argue that the Lease cannot be said, as a matter of law, to be unusual or extraordinary <u>or</u> outside the usual course of business, involving substantially all of the corporation's assets.

Under common law, the mere fact that a corporation has the power to make a certain type of contract does not, of itself, clothe even the highest officer of the corporation with the apparent authority to bind the corporation to such a contract. <u>Corn Belt Bank v. Lincoln Savings & Loan Ass'n</u>, 119 Ill. App. 3d 238, 245 (1983). Further, officers have no apparent authority to make unusual or extraordinary contracts on behalf of a corporation. <u>Corn Belt Bank</u>, 119 Ill. App. 3d at 245. " 'If the president of a corporation were authorized to make contracts of this character without action of the directors and without notice to or knowledge of anyone, the directors would not at any time know whether the company was solvent or insolvent or whether it was headed for bankruptcy.' " <u>Sacks v. Helene Curtis Industries, Inc.</u>, 340 Ill. App. 76, 91 (1950), quoting <u>Warszawa v. White Eagle Brewing Co.</u>, 299 Ill. App. 509, 517-18 (1939).

This court has previously characterized leases much less unusual than the Lease at issue here to be "unusual or extraordinary" as a matter of law, requiring authorization by the board of directors. In <u>Bleck v. Cosgrove</u>, 32 Ill. App. 2d 267 (1961), the president of a country club that was on the verge of insolvency allegedly entered into an <u>oral</u> lease with a tenant who lived in the clubhouse, to extend the term of his one-year <u>written</u> lease for an indefinite number of years in exchange for capital improvements to the property that the tenant made at his own expense in the amount of $2,500. The

---

[5]As will be discussed, if the transaction involves "substantially all" of the corporation's assets, the Act requires board authorization regardless of whether the transaction was outside the usual course of business.

tenant's written lease expired in 1958, and the tenant continued to live in the clubhouse (presumably rent free) until as late as 1961. This court affirmed the trial court's decision on the pleadings and held that, as a matter of law, the oral lease was unusual and extraordinary such that the president lacked the authority to bind the country club to its terms. The court noted that previous leases had all been made in writing, for finite and discernable periods of time, and had been authorized by the board of directors of the country club. Bleck, 32 Ill. App. 2d at 278; see also Sacks, 340 Ill. App. at 89 (a contract to give an employee, as part of his or her compensation, an interest in the corporation's business or its profits was unusual or extraordinary so as to require board approval).

As to the Lease, defendants make no attempt to distinguish Bleck or Sacks. Indeed, the Lease is at least as unusual as the one in Bleck. Here, FIP/Christine transferred numerous properties contained in the Fritzsche Industrial Park to Gregory, a nonfamily member and a nonofficer/nonshareholder. The Lease does not specify Gregory's obligations to FIP's existing tenants. Although the Lease includes properties under trust, no trustees ever signed the Lease. Although the Lease involved 26 different properties (PINs), it seems no professionals, such as attorneys or Realtors, were involved in drafting the Lease; defendants are the only signatories and/or witnesses to the Lease. Perhaps most strangely, the Lease seems to provide Gregory profit with little to no risk or investment. If he generates income, he pays a relatively small percentage of that income to the corporation; if he generates no income, he pays the corporation only taxes due to the government. As such, under common law, the Lease is the sort of transaction that would require authorization by the Board.

In addition to common law, the Act sets forth circumstances under which the president may not act on his or her own and the board and/or the shareholders must be given the opportunity to

participate in the relevant transaction. For example, under section 11.55, entitled "Sale, lease, exchange, or mortgage of assets in usual and regular course of business" (emphasis added), where the transaction involves "all, or substantially all, the property and assets of a corporation," the board of directors must authorize the transaction. 805 ILCS 5/11.55 (West 2006).

Under section 11.60, entitled "Sale, lease or exchange of assets, other than in usual and regular course of business" (emphasis added), where the transaction involves "all, or substantially all, the property and assets *** of a corporation," the board of directors must adopt a resolution recommending the transaction, whereupon said resolution shall be submitted to a vote by the shareholders at a meeting. 805 ILCS 5/11.60(a) (West 2006). Written notice is to be given to the shareholders in accordance with the Act, stating that the purpose of the upcoming meeting will be to vote on the transaction at issue and informing them of their right to dissent under section 11.70. 805 ILCS 5/11.60(b), 11.70 (West 2006). Under section 11.70, if a shareholder has a right to dissent, the shareholder makes a written demand for payment of his or her shares before the vote is taken, the shareholder does not vote for the proposed action, and the proposed action is consummated, then the corporation shall pay the dissenting shareholder the fair value of his or her shares, plus interest, as determined by the Act. 805 ILCS 5/11.70 (West 2006).

As to the Lease, defendants seem to abandon their earlier argument that they did follow corporate formalities. Instead, defendants essentially argue that none of these corporate formalities, either under section 11.55 (for transactions made in the usual course of business) or under the more stringent section 11.60 (for transactions made outside the usual course of business), were triggered, because a question of fact remains as to whether the Lease involved "all, or substantially all, the property and assets" of FIP. Defendants assert that plaintiffs' allegation, that the property in the

Lease constitutes all or substantially all of FIP's assets, is conclusory and is therefore insufficient to entitle them to summary judgment. See Jones v. Dettro, 308 Ill. App. 3d 494, 499 (1999).

We disagree that plaintiffs' statement--that the Lease involved substantially all of the corporation's assets--was conclusory. The only Illinois case to date to directly interpret the meaning of "substantially all of the corporation's assets" is Stiles v. Aluminum Products Co., 338 Ill. App. 48, 49-50 (1949). There, the corporation at issue was engaged in making aluminum and stainless steel kitchen utensils and fabricating aluminum and other metals. The court held that, although the corporation retained $760,622 in cash and marketable securities, the $1,406,570 sale of the corporation's manufacturing plants, inventory, good will, patents, et cetera comprised "substantially all" of the corporation's assets such that the corporation should have had a shareholder meeting and conformed to other corporate formalities set forth in an earlier version of the Act. Stiles, 338 Ill. App. at 49-50. Generally, in determining whether a corporation has encumbered all or "substantially all" of its assets, the pertinent question is whether the corporation can meaningfully continue the corporate enterprise in light of the transaction. 6A W. Fletcher, Private Corporations §2949.40 (2009).

Here, the corporation is named Fritzsche Industrial Park. The Lease itself attached a series of PINs identifying 16 properties located within the industrial park. Plaintiffs present that there are no properties in the industrial park that are not covered by the Lease. Because plaintiffs cannot name allegedly nonincluded property if it does not exist, the burden then falls upon defendants to name any corporate property and/or assets that are not covered by the Lease, so that the court may decide if a question of fact exists as to whether the Lease includes "substantially all" of FIP's assets. See Larson v. Decatur Memorial Hospital, 236 Ill. App. 3d 796, 801 (1992) (when the party moving for

summary judgment supplies facts in support of that motion that, if uncontradicted, would entitle him to summary judgment as a matter of law, the opposing party cannot rely on pleadings alone to raise an issue of material fact). Defendants do not name any FIP property that is not included in the Lease or, as they should have been able to do if the Lease truly did not include substantially all of the corporation's property, explain how the corporation can continue to run its industrial park essentially unencumbered by the Lease.

Rather than name FIP property that is not included in the Lease, defendants take a reverse tack and contend that some of the property contained in the Lease is not owned by the corporation. Defendants' argument that the Lease might contain additional property owned by the Fritzsche family personally is not relevant to the question of whether substantially all of the corporation's assets are included in the Lease. The Lease was the sort of transaction that required the Board's authorization and other corporate formalities. Because no officer had the authority to enter into the Lease without following these formalities, the Lease was properly set aside, or voided. See, e.g., Robb v. Eastgate Hotel, Inc., 347 Ill. App. 261, 277 (1952) (court may set aside transaction involving substantially all of a corporation's assets where the transaction was irregular or unauthorized).

Finally, as to the Lease, defendants contend that the trial court's recognition of remaining questions of fact as stated during its February 27, 2009, ruling precludes a grant of summary judgment. We disagree. Summary judgment is precluded where material questions of fact remain. 735 ILCS 5/2--1005 (West 2006). Questions concerning whether Christine retained her position as secretary/treasurer and as POA were not material because, as a matter of law, Christine would not have had the authority to lease the corporate properties without Board approval even if she had

retained those positions.[6] Questions concerning any alleged insider dealing between Christine and Gregory were not material because, as discussed above, Christine would not have been authorized to lease "substantially all" of the corporation's assets to anyone without the Board's approval. Questions concerning the amount of the rent, whether certain properties included in the Lease are owned by Herbert personally rather than FIP, and exactly how the options to extend the Lease may be exercised or discontinued are not material because they do not speak to Christine's authority to lease FIP's property. Moreover, we find it odd that defendants would raise questions concerning the terms of the Lease (i.e., rent, ownership, and renewal mechanisms) because, as plaintiffs note, an agreement that is indefinite and lacks specificity cannot be enforced as a contract. Brewer v. Daubert Chemical Co., 72 Ill. App. 3d 718, 722 (1979).

## B. The Note

As a threshold matter, defendants contend that the trial court erred in voiding the Note when plaintiffs' verified amended complaint did "not seek any relief whatsoever with regard to the [Note]." Defendants note that section 2--604 of the Code states that "every complaint and counterclaim shall contain specific prayers for relief to which the pleader deems himself or herself entitled." 735 ILCS 5/2--604 (West 2006).

We first note that defendants provided this court with only a limited excerpt of section 2--604. Section 2--604 also states that "[e]xcept in case of default, the prayer for relief does not limit the

---

[6]Although defendants could have argued that Christine, as POA, did not need to follow corporate formalities in order to lease Herbert's property to Gregory, defendants did not raise the issue of severability and have thus forfeited that argument. See, e.g., People v. Accardo, 139 Ill. App. 3d 813, 816 (1985) (stating generally that arguments not raised in briefs are waived).

relief obtainable, but where other relief is sought the court shall, by proper orders, and upon terms that may be just, protect the adverse party against prejudice by reason of surprise." 735 ILCS 5/2--604 (West 2006). While true that a judgment must conform to and be supported by the pleading and proof in the cause (Kohler v. Kohler, 326 Ill. App. 105, 109 (1945)), a general prayer for relief is sufficient to warrant any judgment that is supported by the facts alleged in the complaint if those facts are proved by evidence (County of Du Page v. Henderson, 402 Ill. 179, 191 (1949)).

Here, it is not true that plaintiffs did not seek "any relief whatsoever" in their complaint with regard to the Note. In paragraphs 73 through 78 of their complaint, plaintiffs alleged that Christine's execution of the Note constituted an "illegal action" in that it was entered into without corporate authority, would subject FIP to claims by Shaver, and would diminish the value of FIP. Plaintiffs attached a copy of the Note to the complaint. Then, in count I, wherein plaintiffs sought a declaratory judgment, plaintiffs requested, among other relief, that the court declare that Christine had no corporate authority to act on behalf of FIP and "grant[] such other relief as the Court deems just[,] fair[,] and proper." In count II, wherein plaintiffs sought "injunctive and other relief," plaintiffs stated that Christine's "actions constitute a waste of FIP assets which render the corporation insolvent and unable to pay its debts" and requested, among other relief, that the court "grant[] such other relief as the Court deems just, fair[,] and proper." It is true that the complaint centered around the illegality of the Lease, but plaintiffs also made allegations concerning the illegality of the Note and asked for whatever relief the court deemed appropriate. By alleging that the Note was illegally made, alleging generally that defendants' actions (which would include the making of the Note) constituted waste, and by asking generally that the court intervene to preserve the financial livelihood of FIP and provide

what other relief it deemed fair, plaintiffs adequately framed the issue of the Note's validity such that defendants could not claim surprise when the court voided the Note.

On the merits, we affirm the trial court's grant of summary judgment because, as plaintiffs alleged in their motion for summary judgment and now allege on appeal, FIP bylaws prohibit the execution of loans and other evidences of indebtedness unless authorized by a Board resolution. We recognize that the trial court, in finding that the Note was outside the ordinary course of business, hinted that its basis for voiding the Note was section 11.60. However, we believe that Christine's violation of FIP's bylaws provides the stronger basis upon which to affirm. See Hintz v. Lazarus, 58 Ill. App. 3d 64, 67 (1978) (court of review may affirm a judgment for reasons other than those relied upon by the trial court, and the judgment will be sustained if it is correct, irrespective of the trial court's reasoning).

Corporate bylaws constitute an enforceable contract between the corporation and its shareholders, and both officers and shareholders are bound by the bylaws. Cratty v. Peoria Law Library Ass'n, 219 Ill. 516, 523 (1906); Chapman v. Freeport Securities Co., 174 Ill. App. 3d 847, 852-53 (1988) (voiding an employment contract that was not signed by the president where corporate bylaws required the president's signature and where no board of directors resolution waiving bylaws was found to exist). Article V, section 2, of FIP's bylaws, entitled "Contracts, Loans, Checks[,] and Deposits," states, in relevant part:

"No loans shall be contracted on behalf of the corporation and no evidences of indebtedness shall be issued in its name unless authorized by a resolution of the board of directors. Such authority may be general or confined to specific instances."

Here, the Note is an "evidence of indebtedness" on the corporation. Although defendants hint in their response to the motion for summary judgment that the Note is possibly secured by Herbert's property (contained in land trust No. 6004) rather than the corporation's property, the Note clearly states that "[t]his Note shall constitute a lien upon all assets of Maker," said "Maker" being land trust No. 6004 and FIP.

Also, here, it is clear that no Board resolution exists, either general or specific, authorizing an officer to enter into a contract that places an indebtedness on the corporation. Defendants argue that no resolution was necessary, because, at the January 17, 2006, Board meeting, the Board signed a document entitled "Waiver of Notice of First Meeting of Board of Directors." That document stated that the Board waived notice of the first meeting and any meeting thereafter and stated that any business conducted at said meetings would be as valid as if that business were conducted pursuant to notice of the meetings. Contrary to defendants' intimation, this waiver is not a waiver of all corporate formalities, such as the requirement stated in the corporate bylaws that the Board must authorize any corporate indebtedness via a resolution.

Because the Note improperly placed a $450,000 lien on the corporation without Board authorization via a resolution, we find that the trial court properly found that Christine was not authorized to make the Note.

Defendants also argue that the trial court erred in determining that, as a matter of law, the Note was not made in the "ordinary course of business," thus triggering the corporate formality requirements set forth in the common law and the Act. However, because Christine's action of making the Note violated FIP's particular bylaws, we need not address defendants' arguments that

Illinois law generally allows a president of a corporation, an officer acting upon a president's direction, or a secretary of a corporation to execute a Note made in the ordinary course of business.

Because we find that, as a matter of law, Christine was not authorized to enter into the Lease or make the Note, we affirm the trial court's grant of summary judgment to plaintiffs.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

O'MALLEY and BURKE, JJ., concur.